# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **DON M. DOWNING and ADAM J. LEVITT,** on behalf of themselves and those similarly situated, | ) ) ) ) | |
| | ) | **Case No.** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | |
| **GOLDMAN PHIPPS PLLC, GOLDMAN PENNEBAKER & PHIPPS, P.C., MIKAL C. WATTS, P.C., KELLER STOLARCZYK PLLC, MARTIN J. PHIPPS, and MIKAL C. WATTS,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## CLASS ACTION COMPLAINT AND
## COMPLAINT FOR INTERPLEADER

Plaintiffs Don M. Downing and Adam J. Levitt, Court-appointed Co-Lead Counsel in the related multidistrict litigation captioned *In re Genetically Modified Rice Litigation*, 4:06 MD 1811-CDP, pending before this Court (hereinafter the "Rice MDL") on behalf of themselves, as well as the below-defined Class (the "Class"), and additionally in their capacity as Co-Trustees of the Common Benefit Fund Qualified Settlement Fund Trust (the "CBF Trust") created and subsequently amended, by orders of the Court in the Rice MDL dated June 9, 2010 (Rice MDL Dkt No. 2992) and December 15, 2011 (Rice MDL Dkt. No. 4344) (collectively, the "CBF Trust Orders"), allege against defendants Goldman Phipps PLLC, Goldman Pennebaker & Phipps, P.C. (f/k/a Adami, Goldman & Shuffield, Inc.), Mikal C. Watts, P.C., Keller Stolarczyk PLLC, Martin J. Phipps, and Mikal C. Watts (collectively "Defendants"), as follows:

## I.  <u>NATURE OF THE ACTION</u>

1.      Plaintiffs, individually and on behalf of the other members of the Class, seek to recover against Defendants for unjust enrichment and quantum meruit as a result of the substantial benefit Defendants received from the common benefit services, materials and/or related expense items provided or paid for by Class members in the Rice MDL.

2.      Additionally, Plaintiffs, in their capacity as Co-Trustees of the CBF Trust, interplead, under 28 U.S.C. § 1335 and Rule 22, FED.R.CIV.PROC., approximately $1,429,393.37 of funds held by the CBF Trust from the 3% cost portion of the common benefit fund assessment ordered by this Court in its Memorandum and Order dated February 24, 2010 (Rice MDL Dkt No. 2574) (the "Common Benefit Order") which Defendants have claimed and as to which some Class members have made competing claims (the "Disputed CBF 3% Cost Funds").

## II.  <u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  There are over 100 members in the below-defined Class; the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and Plaintiffs and other members of the Class are citizens of different states than the Defendants.

4.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1335(a). Plaintiffs, in their capacity as Co-Trustees of the CBF Trust, are in the possession of more than $500 in funds held within the CBF Trust and, as set forth below, two or more adverse claimants, of diverse citizenship as defined in subsections (a) and (d) of 28 U.S.C. § 1332, claim to be entitled to such funds.  A deposit of these funds into the registry of this Court under the requirements of 28 U.S.C. § 1335(a)(2) is not required because these funds, as held in the CBF Trust, are already subject to this Court's jurisdiction under orders entered by this Court in the Rice MDL.

5.     This Court also has jurisdiction over the claims asserted in this action by virtue of its exercise of jurisdiction and control over the funds held in the CBF Trust under orders it has entered in the Rice MDL, including specifically the Common Benefit Order, the CBF Trust Orders and the Allocation and Distribution Order described below.   This Court's jurisdiction over the funds held in the CBF Trust extends to resolve the unjust enrichment and quantum meruit claims asserted in this action, including specifically the claims seeking a recovery under those claims out of or from the Disputed 3% CBF Cost Funds.  Under *Fulton National Bank of Atlanta v. Hozier*, 267 U.S. 276, 280 (1925), this Court has ancillary jurisdiction because the claims raised in this Complaint, including specifically the claims seeking recovery against the Disputed 3% CBF Cost Funds claimed by Defendants, have a "direct relation to property or assets actually or constructively drawn into [this Court's] possession or control by the principal suit."  *See also Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1300 (7th Cir. 1995); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977) (*per curiam*).

6.     Additionally, or in the alternative, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.  The unjust enrichment and quantum meruit claims asserted in this action are so related to Plaintiffs' claims seeking recovery out of or from the Disputed 3% CBF Cost Funds claimed by Defendants, as well as Plaintiffs' interpleader claims, that they form part of the same case or controversy under Article III of the United States Constitution.

7.     This Court has personal jurisdiction over each of the Defendants because they actively do and/or have done business in Missouri (including representing clients and attending court sessions in the Rice MDL, attending hearings in the Rice MDL, attending mediation sessions and other settlement meetings within this District, and directing numerous telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this

litigation) and have sufficient minimum contacts in Missouri, by virtue of their involvement in the Rice MDL pending in this District – including appearing before this Court – to render the exercise of jurisdiction by this Court over them proper under the Due Process Clause of the United States Constitution.  Also, personal jurisdiction over Defendants is proper because they transact business within Missouri, thereby subjecting Defendants to personal jurisdiction under Missouri's Long-Arm Statute.  Mo. Rev. Stat. § 506.500.

8.      Venue is appropriate in this District under 28 U.S.C. § 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this District or otherwise have sufficient contacts with this District to subject them to personal jurisdiction in this District.  Further, with respect to the interpleader claims asserted by Plaintiffs in their capacity as Co-Trustees of the CBF Trust, venue is proper in this District under 28 U.S.C. § 1397 because at least one claimant, Plaintiff Downing, in his capacity as Co-Lead Counsel, acting on behalf of himself and the Class, is a resident of this District.

## III.  PARTIES

*Named Plaintiffs*

9.      Don M. Downing is a citizen of the State of Missouri and is one of plaintiffs' Court-appointed Co-Lead Counsel in the Rice MDL.

10.     Adam J. Levitt is a citizen of the State of Illinois and is one of plaintiffs' Court-appointed Co-Lead Counsel in the Rice MDL.

11.     Don M. Downing and Adam J. Levitt are also Co-Trustees of the CBF Trust in the Rice MDL.

*Defendants*

12.     Goldman Phipps PLLC (f/k/a Goldman Pennebaker & Phipps, P.C. and prior to that, Adami, Goldman & Shuffield, Inc.) is a law firm with its principal place of business in San Antonio, Texas.   Upon information and belief, all members of Goldman Phipps PLLC are citizens of the state of Texas and as result, Goldman Phipps PLLC is a citizen of the State of Texas.   Goldman Phipps PLLC (and its predecessor law firms) filed numerous cases against various Bayer[1] entities on behalf of farmer (producer) plaintiffs in both the Rice MDL, as well as in state courts.   Principals of Goldman Phipps PLLC have actively participated in court sessions, mediations, and other meetings in this District, and have directed telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this litigation.    In addition, principals and other attorneys from Goldman Phipps PLLC attended one or more of the bellwether trials in the Rice MDL and have obtained transcripts and exhibits from those trials, as well as deposition transcripts and exhibits from the Rice MDL.

13.      Goldman Pennebaker & Phipps, P.C. (f/k/a Adami Goldman & Shuffield, Inc.) is a professional corporation incorporated and headquartered in the state of Texas and is a citizen of the State of Texas.   Goldman Pennebaker & Phipps, P.C. is a predecessor law firm to Goldman Phipps PLLC.   Goldman Pennebaker & Phipps, P.C. (and its predecessor law firm, Adami Goldman & Shuffield, Inc.) filed numerous cases against various Bayer entities on behalf of farmer (producer) plaintiffs in both the Rice MDL, as well as in state courts.   Principals of Goldman Pennebaker & Phipps, P.C. have actively participated in court sessions, mediations, and other meetings in this District and have directed telephone calls, e-mails, and other

---

[1] For purposes of this complaint, "Bayer" is defined as Bayer CropScience LP, Bayer CropScience Holding, Inc., Bayer CropScience Inc., Bayer CropScience LLC, Stoneville Pedigreed Seed Company, Bayer Corporation, Bayer AG, Bayer CropScience AG, Bayer BioScience NV, Bayer CropScience Holding SA and Bayer CropScience SA.

correspondence into this District pertaining to the subject matter of this litigation.  In addition, principals and other attorneys from Goldman Pennebaker & Phipps, P.C. attended one or more of the bellwether trials in the Rice MDL and have obtained transcripts and exhibits from those trials, as well as deposition transcripts and exhibits from the Rice MDL.

14.    Mikal  C.  Watts,  P.C.,  is  a  professional  corporation  incorporated  and headquartered in the State of Texas and therefore is a citizen of the State of Texas.  Mikal C. Watts, P.C. is co-counsel with Goldman Phipps PLLC (and its predecessor law firms) in the federal and state court cases Goldman Phipps PLLC and its predecessor law firms filed against various Bayer entities.  Mikal C. Watts, as a shareholder of Mikal C. Watts, P.C., as well as other attorneys at Mikal C. Watts, P.C., have appeared before this Court and have attended and/or participated in court hearings, mediations, and other settlement meetings in this District, and have  directed  many  telephone  calls,  e-mails,  and  other  correspondence  into  this  District pertaining to the subject matter of this litigation.

15.    Keller Stolarczyk PLLC is a law firm with its principal place of business in Boerne, Texas.   Upon information and belief, all members of Keller Stolarczyk PLLC are citizens of the state of Texas and as result, Keller Stolarczyk PLLC is a citizen of the State of Texas.  Keller Stolarczyk PLLC is co-counsel with Goldman Phipps PLLC in the federal and state court cases Goldman Phipps PLLC and its predecessor law firms filed against various Bayer entities.  Principals of Keller Stolarczyk PLLC have among other things, appeared before this Court and have both attended and/or participated in mediations, and other settlement meetings in this District, and have directed many telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this litigation.

16.     Martin J. Phipps is a member of Goldman Phipps PLLC and was formerly a shareholder of the predecessor law firms of Goldman Pennebaker & Phipps, P.C. and Adami, Goldman & Shuffield, Inc.  He is a citizen of the state of Texas.  Mr. Phipps has filed numerous cases against various Bayer entities on behalf of farmer plaintiffs in both the Rice MDL, as well as in state courts.  Mr. Phipps, individually and/or on behalf of Goldman Phipps PLLC (and its predecessor law firms Goldman Pennebaker & Phipps, P.C. and Adami, Goldman & Shuffield, Inc.), has appeared before this Court and has attended and/or participated in Court hearings, mediations, and other settlement meetings in this District, and has directed many telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this litigation.  In addition, Martin J. Phipps, on behalf of Goldman Pennebaker & Phipps, P.C., is a signatory of the "GMB Settlement Agreement," which is intertwined with the MDL Settlement that resolves certain cases pertaining to LLRICE Contamination (defined below).

17.     Mikal C. Watts is a citizen of the state of Texas.  Mr. Watts is a member of Mikal C. Watts, P.C.  Mr. Watts is co-counsel with Goldman Phipps PLLC in the federal and state court cases Goldman Phipps PLLC and its predecessor law firms filed against various Bayer entities.  Mr. Watts, individually and/or on behalf of Mikal C. Watts, P.C., has among other things, appeared before this Court and has attended and/or participated in Court hearings, mediations, and other settlement meetings in this District, and has directed many telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this litigation.  In addition, Mikal C. Watts, on behalf of Mikal C. Watts P.C., is a signatory of the "GMB Settlement Agreement", which is intertwined with the MDL Settlement that resolves certain cases pertaining to LLRICE Contamination.

## IV.  **SUBSTANTIVE ALLEGATIONS**

*The Rice MDL and Related Actions*

18.     On August 18, 2006, the USDA announced that the U.S. rice supply had been contaminated with Bayer's genetically modified LLRICE (the "LLRICE Contamination").  Soon thereafter, thousands of rice producers and numerous non-producers asserted claims against various Bayer entities in both federal and state courts.

19.     Defendants filed cases against various Bayer entities in federal and state courts.

20.     On December 19, 2006, in an effort to streamline and coordinate the large number of lawsuits filed, the Judicial Panel on Multidistrict Litigation ("JPML") transferred all pending federal court actions pertaining to the above-referenced LLRICE Contamination, and all tag-along federal actions against various Bayer entities to this Court.

21.     Once all related federal cases were transferred to this Court for coordinated and/or consolidated proceedings – in the form of the previously-described Rice MDL – the Court appointed Don Downing as Plaintiffs' Co-Lead and Liaison Counsel and appointed Adam Levitt as Plaintiffs' Co-Lead Counsel.  The Court also appointed Richard J. Arsenault, Scott E. Poynter, William Chaney, Ralph E. Chapman, Joseph R. Whatley and Stephen A. Weiss to the Plaintiffs' Executive Committee.  Plaintiffs' Co-Lead Counsel and Executive Committee are sometimes referred to herein as the "Leadership Group".  The Order Appointing Co-Lead Counsel and the Executive Committee, dated April 18, 2007, (the "Leadership Order") is Dkt No. 182 in the Rice MDL.

22.     The Leadership Order in the Rice MDL explicitly provided that Lead Counsel "shall act on behalf of all plaintiffs" in the Rice MDL as follows:

    1.     To direct and execute on behalf of Plaintiffs the filing of pleadings and other documents with the Court;

2.     To direct and manage pretrial proceedings on behalf of all plaintiffs, including the briefing and argument of motions and the conduct of all types of discovery proceedings; (emphasis added).

3.     To seek the assistance of other plaintiffs' counsel, including but not limited to those on the Executive Committee, in performance of all work necessary for the prosecution of the case, including investigation, research, briefing, and discovery, with particular attention to using efficiently the resources of the other Plaintiffs' counsel in a manner commensurate with those lawyers' resources and experience;

4.     To direct the selection of counsel to act as spokespersons before the Court;

5.     To call and chair meetings of Plaintiffs' counsel;

6.     To direct and conduct settlement negotiations;

7.     To direct and arrange a system for keeping and collecting all Plaintiffs' counsel's time records; and

8.     To supervise any other matters concerning the prosecution or resolution of this litigation." *Id.*

23.     Over the next five years, Plaintiffs and the Class invested considerable time and financial resources to provide, and did provide, substantial benefits to all plaintiffs - in both the Rice MDL, as well as in state court proceedings – which also substantially benefitted Defendants.

24.     These common benefit efforts include, but are not limited to: (a) the substantial factual investigation and legal research under the laws of Missouri, Arkansas, Mississippi, Louisiana, and Texas, in connection with the drafting of a consolidated master complaint that was used as a model for later complaints in both state court and federal court; (b) spearheading the extensive document discovery efforts (including drafting and responding to numerous discovery requests, serving subpoenas on numerous third parties, and reviewing, coding and managing over 2.8 million pages of documents in order to lay the groundwork for the depositions that followed); (c) engaging in extensive and protracted meet-and-confer discussions with

Bayer's counsel and counsel for third parties with respect to discovery and other case-related issues and engaging in motion practice relating thereto; (d) taking or defending 167 depositions across the United States and internationally, which provided important fact discovery and persuasive trial evidence for all plaintiffs; (e) successful effectuation of service on the foreign Bayer entities and opposition to Bayer's motion to dismiss the claims against the foreign Bayer entities for lack of personal jurisdiction, which paved the way for all plaintiffs (including Defendants' clients) to obtain discovery from the foreign Bayer entities; (f) coordination of pre-trial proceedings with all plaintiffs' counsel in the Rice MDL and in related state court actions, including Defendants; (g) identifying, interviewing and selecting from numerous candidates, consulting and testifying experts; (h) prosecuting and defending numerous and significant dispositive, evidentiary and other motions, including the successful opposition to Bayer's summary judgment motions, which contained arguments that, if accepted, would have cut off the right to recovery, in whole or in part, for every plaintiff in a state with the same or similar laws; (i) preparation of numerous opening and rebuttal expert reports (and taking discovery pertaining to Bayer's experts); (j) preparing for numerous trials, including by, among other things, holding multiple mock trials and meeting with jury consultants to refine their trial strategy and the evidence presented; (k) conducting three successful bellwether trials,[2] two of which were completed before any other trials in the country began, as well as the state court trial of *Schafer v. Bayer CropScience LP*, CV-06-423, in the Circuit Court of Lonoke County, Arkansas ("*Schafer*"); (l) defending the appeals of all bellwether trial verdicts before the 8th Circuit Court of Appeals and defending the appeal of the plaintiffs' verdict in the *Schafer* case before the Arkansas Supreme Court; (m) organizing, directing and participating in mediation proceedings

---

[2] The fourth bellwether trial settled prior to its conclusion.

before Judge Limbaugh and John Perry, conducting numerous teleconferences, and sending numerous e-mails and other correspondence keeping plaintiffs' counsel (including Defendants) advised of the status of settlement discussions; and (n) leading the settlement discussions which resulted in the Global Producer Settlement[3] announced on July 1, 2011.

25.    The common benefit services, materials and/or related expense items provided or paid for by Class members have benefited all counsel in both the federal and state cases – including the Defendants.

***The Common Benefit Order***

26.    In light of their efforts, which facilitated the streamlined and efficient prosecution of all cases against Bayer for the benefit of all plaintiffs – including Defendants' clients – in August 2009, the Leadership Group filed a motion to establish a Common Benefit Fund to compensate those attorneys working with Court-appointed Co-Lead Counsel to benefit all persons or entities that suffered loss as a result of the LLRICE Contamination, including plaintiffs with cases pending in state court (the "Common Benefit Attorneys").  The motion entailed substantial briefing, as well as comprehensive and heated opposition from, among others, Defendants here.  *See e.g.*, Rice MDL Dkt Nos. 1458-1460, 1522, 1525, 1527, 1585-1586.

27.    On February 24, 2010 this Court entered its Common Benefit Order, granting, in large part, the Leadership Group's motion.

---

[3] The Global Producer Settlement is comprised of two separate settlements, which together, provide $750 million to resolve rice producers' claims arising out of the LLRICE Contamination.  The "MDL Settlement" was entered into by and among Bayer and the following attorneys: Don Downing, Adam Levitt, Richard Arsenault, Bill Chaney, and Scott Powell.  The MDL Settlement covers all claimants who had cases pending in the Rice MDL, as well as all other claimants who agreed to be bound by the terms of the MDL Settlement.  The second settlement, the "GMB Settlement," was entered into by and among Bayer and the following attorneys: defendant Martin J. Phipps, defendant Mikal C. Watts, Chuck Banks and Steve Murray (collectively, the "GMB Counsel").  The GMB Settlement covers GMB Counsel's clients who were outside of the Rice MDL.

28.     Specifically, this Court ordered that Bayer "shall hold back and set aside for placement into Lead Counsel's common benefit trust fund, the following amounts related to each federal genetically modified rice case and related to each state case where either the parties agree, or the State Court having jurisdiction orders:  (i) 8% of any gross recovery obtained by producer plaintiffs by way of judgment, settlement or otherwise, for attorneys fees; (ii) 7% of any gross recovery obtained by non-producer plaintiffs, except for the ENPs [European non-producers], by way of judgment, settlement, or otherwise, for attorneys' fees; (iii) 6% of any gross recovery obtained by European non-producer plaintiffs, except for Rickmers, by way of judgment, settlement, or otherwise, for attorneys' fees; and (iv) an additional 3% of any gross recovery obtained by any plaintiff, by way of judgment, settlement, or otherwise for common benefit costs and expenses incurred by attorneys providing a common benefit."

29.     In its Common Benefit Order, this Court reluctantly concluded that it lacked jurisdiction to extend the provisions of that Order to state court litigants (including Defendants' clients pursuing claims in state courts), but noted that these plaintiffs and their counsel would be unjustly enriched should they refuse to voluntarily pay into the common benefit fund, stating:

> I urge the parties to consider the unjust enrichment issues [implicated by state court plaintiffs and their counsel benefitting from the common benefit information from the Rice MDL in their state court actions] in their settlement negotiations, and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

Rice MDL Dkt No. 2574 at 2.

30.     As a result of this Court's finding that it lacked jurisdiction to extend the Common Benefit Order to state court litigants, Defendants were able to avoid contributing to the Common Benefit Fund on behalf of their clients pursuing claims outside of the Rice MDL (including those clients who recovered under the GMB Settlement or obtained jury verdicts in

state court).  Defendants did so despite the fact that Class members conferred substantial benefits on Defendants by providing them with the common benefit services, materials and/or related expense items, which the Defendants accepted and benefitted from in representing their clients outside of the Rice MDL.

### The Benefits Conferred on Defendants by the Class

31.     Defendants had cases in both the Rice MDL and in state courts and as a result, had access to the common benefit services, materials and/or related expense items provided or paid for by members of the Class.  Defendants benefitted from their acceptance of these common benefit services and materials, not only in representing their Rice MDL clients, but also in representing those clients outside of the Rice MDL.

32.     In addition, attorneys working with and for the Defendants were present for substantial portions of the first Rice MDL bellwether trial, the entirety of the second bellwether trial, and countless motion and status hearings in the Rice MDL.  Defendants were able to observe the presentation of evidence and trial strategy that was painstakingly developed by Common Benefit Attorneys and used this knowledge for benefit of their state court cases.

33.     In its Common Benefit Order, this Court recognized the extensive benefits that Defendants reaped from the Class:

> One of the objecting lawyers, Martin Phipps, is currently conducting a trial of one plaintiff's case in an Arkansas state court. *Although Phipps has used his own expert witnesses, he has also used the depositions taken by the leadership group, and he has used the documents and other discovery from Bayer obtained by the leadership group.  A member of the Phipps firm attended all depositions conducted by the leadership group and asked questions at the end.  A representative of the Phipps firm was in daily attendance at the second bellwether trial. The Phipps firm and other firms with state cases obtained large portions of the trial transcripts of the bellwether trials, including the examination and cross examination of some of the same expert witnesses who Bayer will use in the current Arkansas trial and in other state trials.*

Common Benefit Order at 5 (Rice MDL Dkt No. 2574).   (emphasis added).

34.     In addition, this Court found, in relevant part, that:

it is abundantly clear that the plaintiffs in the related state court cases have derived substantial benefit from the work of the leadership counsel in these federal cases.  In fact, most of the lawyers representing plaintiffs in state court cases have agreed to join the [common benefit] trust. *The lawyers and plaintiffs who have not agreed to join in the trust will have been unjustly enriched if they are not required to contribute to the fees of the leadership group.*  But I do not have jurisdiction to order the hold-back for those states court cases. This is so even though the plaintiffs' lawyers who have state cases also have cases before me.  I urge the parties to consider the unjust enrichment issues in their settlement negotiations and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

*Id.*. at 2 (emphasis added).

35.     The Court further found:

For almost three years, the leadership group has coordinated pre-trial preparations for all plaintiffs in this litigation with claims against the Bayer defendants. In an early Case Management Order [ ], I ruled that depositions taken in the MDL could be cross-noticed with state cases and could be used in the state suits to the extent allowed by the applicable state courts. The leadership group, along with other plaintiffs' counsel working with it, has prepared for and conducted several hundred depositions, has requested discovery, appears before the court regularly at hearings and conferences, prepares and opposes motions, selects and prepares experts, and negotiates with defendants on procedural and substantive issues related to the litigation.

The leadership group shares the products of its labor with all of the plaintiffs. All depositions and other discovery responses from the Bayer defendants have been made available to all the plaintiffs in all the cases, state and federal. The leadership group made available to state counsel the massive document production that it received from the Bayer defendants.

*Id.* at 4-5.

* * * *

As set out above, the leadership group's work in discovery, motion practice, and the bellwether trials has provided a foundation for all of the cases involved in the litigation. Evidence about what Bayer did in developing and distributing the genetically modified rice is central to the proof on all the claims in this litigation. This evidence was exclusively within Bayer's control, and the only realistic way for the evidence to be developed was through the type of centralized discovery that the leadership group conducted. It would not have been possible for

thousands of plaintiffs to separately obtain discovery from Bayer, and that, of course, is part of the reason the cases were combined in this MDL. In addition to coordinating and conducting all discovery against Bayer, the leadership lawyers have conducted two bellwether trials. Those trials essentially provided a preview for all other plaintiffs of the trial testimony they might expect from the Bayer witnesses and the types of cross-examination that their witnesses and clients might expect at trial from Bayer's counsel. The trial preview, when combined with the discovery, is a great benefit for all plaintiffs, whether they are producers, non-producers, or ENPs.

The objectors' additional arguments on this issue do not diminish the substantial benefit they have received from the leadership group's work or make the trust inappropriate. Complaints that the leadership group's work was poor is belied by the evidence that was presented at the two bellwether trials before me. That evidence was well-organized and well-presented, and two juries found it persuasive. These minor complaints about the organization or presentation of the leadership group's work ignore the significant amount of time and effort the leadership group spent in obtaining the documents and depositions in the first place. Additionally, I reject the objectors' arguments that because they did some of their own pre-trial preparation, they should not have to contribute. It was never intended that the leadership group would perform all of the work for every plaintiff in this litigation. Plaintiffs are substantially benefitted by 'the mere availability' of relevant discovery, even if an objecting plaintiff chooses not use it. In this case, of course, the objectors have actually used the leadership group's materials.

*Id.* at 12-14 (citation omitted).

36.     This Court's findings that Defendants benefited from and accepted the common benefit services, materials and related expense items provided or paid for by Class members are further confirmed by, among other things, a review of the trial transcript from the state court case captioned *Kyle v. Bayer AG*, cv-2008-107, in the Circuit Court of Woodruff County, Arkansas, before the Honorable Bentley E. Story (hereinafter the "*Kyle* litigation"), at which one or more of the Defendants acted as trial counsel for the *Kyle* plaintiffs ("*Kyle* counsel"). A review of the transcript from the *Kyle* trial (which was the first case tried by Defendants) reveals that, among other things:

- *Kyle* Counsel relied on legal arguments previously made by Common Benefit Attorneys and this Court's rulings in their favor, urging Judge Story, the state court judge, to follow the same reasoning, on issues including: (1) intervening /

superseding cause; (2) interpretation of the Plant Protection Act and APHIS regulations as allowing no adventitious presence of unapproved genetically modified material; (3) admissibility of punitive damages; and (4) preemption under the Plant Protection Act, 7 U.S.C. § 7756(a).

- 40 of the 50 deponents whose exhibits were designated by *Kyle* Counsel were Rice MDL deponents. Common Benefit Attorneys culled through millions of pages of discovery produced in the Rice MDL to find the most relevant documents to use at each of the MDL depositions they took. *Kyle* Counsel then simply designated these Rice MDL deposition exhibits as trial exhibits in their state court trial, without having to perform all of the work.

- Of the 17 key witnesses whose deposition or trial testimony was designated by *Kyle* Counsel, 13 were from the Rice MDL, including Dirk Klonus, Randy Ouzts, John Wichtrich, Bernard Schreiber, Steve Linscombe, and Raymond Shillito. The Rice MDL depositions of these key witnesses were taken by Common Benefit Attorneys. *Kyle* Counsel did not ask any questions in the MDL depositions of these witnesses.

- Of the 22 people on *Kyle* Counsel's witness list, eighteen were deposed or gave trial testimony in the Rice MDL.

- In his opening statement, Mr. Phipps told the jury that key witnesses would include Rice MDL witnesses Franz Eversheim, John Wichtrich, Randy Ouzts, and Steve Linscombe.

- *Kyle* Counsel presented the testimony of several key witnesses in their case in chief (including Dirk Klonus, Randy Ouzts, Bernard Schreiber and John Wichtrich) by video, all from their Rice MDL videotaped depositions. *Kyle* Counsel did not take part in questioning any of these witnesses and instead, simply relied on the work product of the Common Benefit Attorneys.

- *Kyle* Counsel also presented the Rice MDL trial testimony of Keith Glover. Again, *Kyle* Counsel asked no questions of Mr. Glover and instead, simply relied on the Common Benefit Attorneys' work product.

- Because a representative of *Kyle* Counsel was in daily attendance at the Rice MDL second bellwether trial, Defendants received an invaluable preview of the testimony of two of Bayer's experts, Ms. Shuffield and Mr. Helms, as well as key witnesses including Kirk Johnson, all of whom Bayer called live at the *Kyle* trial.

- *Kyle* Counsel designated all of the Bayer Defendants' Responses to discovery in the Rice MDL, including the Responses to Interrogatories, Requests for Admission and Document Requests that were propounded by the Leadership Group.

- *Kyle* Counsel introduced scores of key exhibits obtained in discovery by Common Benefit Attorneys and previously used in the Rice MDL bellwether trials.

- Kyle Counsel used the Rice MDL deposition testimony of Randy Ouzts, Bernard Schreiber and Keith Glover – along with corresponding Rice MDL documents – in closing argument in the *Kyle* trial.

- *Kyle* Counsel provided the limiting instruction advocated by Common Benefit Attorneys which this Court gave at the Rice MDL trials regarding Starlink and urged the state court to use the same language.

- *Kyle* Counsel provided and Judge Story gave, the same agency instruction advocated by Common Benefit Attorneys and accepted by this Court in the first two Rice MDL bellwether trials.

- *Kyle* Counsel sought a directed verdict regarding LSU/Linscombe's agency status, urging Judge Story to follow this Court's prior ruling on the issue, which he ultimately did.

37.  Defendants accepted the common benefit services, materials and related expense items provided or paid for by the Class, in their state court cases for, among other things, their own discovery, their trial strategy, their own motions, to defeat Bayer's motions, for testimony, exhibits, cross-examination, and jury instructions.  As this Court has already held, Defendants received a substantial benefit from the common benefit work.

***The Allocation and Distribution Order***

38.  On September 4, 2012, Plaintiffs filed a motion for allocation and distribution of common benefit fees and expenses in the Rice MDL.  On December 6, 2012, after exhaustive briefing on the issues, this Court issued an Order Adopting the Report and Recommendation of the Special Master for the Allocation and Distribution of Common Benefit Fees and Expenses (the "Allocation and Distribution Order") (Rice MDL Dkt No. 4935) granting Plaintiffs' motion and ordering that the Common Benefit Attorneys' fees and expenses be paid from the fund.  The Court further ordered that six designated firms were entitled to any additional funds they received up to $72 million and "if the total common benefit fund amounts received exceeds $72

million, plaintiffs' co-lead counsel shall approach the Court with a recommendation as to the allocation of those additional funds."

39.    In the Allocation and Distribution Order, this Court also found that "the work performed by the common benefit attorneys definitely benefitted the Phipps Group and its clients.  It is not an exaggeration to say that the Phipps Group has been unjustly enriched by the work of the common-benefit attorneys."  Rice MDL Dkt No. 4935 at 6.

40.    In a motion filed in the United States Court of Appeals for the Eighth Circuit challenging and seeking a stay of the Allocation and Distribution Order, Defendants contended they have made "overpayments" to the CBF Trust of the 3% cost assessment ordered under the Common Benefit Order in the approximate amount of $1.3 million.  *See* Appellants' Motion for Emergency Stay, filed December 18, 2012, at p. 17, in the case captioned *The Phipps Group v. Don Downing & Adam Levitt*, etc., No. 12-3958, United States Court of Appeals for the Eighth Circuit.  Records currently available from the administrator of the MDL Settlement actually reflect that a total of $1,429,393.37 in 3% cost assessment funds appears to have been paid on behalf of or with respect to settlements of claims by Defendants' clients.  Defendants have further asserted in papers filed with this Court that ***Defendants*** (and not their clients) are entitled to a return of the Disputed 3% CBF Cost Funds.  *See* Rice MDL Dkt No. 4958 at 6; *see also* Rice MDL Dkt No. 4839 at 18-19.

41.    Plaintiffs, in their capacity as Co-Trustees of the CBF Trust, have received notice from some Class members that the Disputed 3% CBF Cost Funds should not be distributed to Defendants, but rather held and then applied in partial satisfaction of the Unjust Enrichment and Quantum Meruit Claims.  In particular, because the Disputed 3% CBF Cost Funds are claimed by Defendants, and not any of their clients, Plaintiffs and other Class members who have paid or

borne the 3% cost assessment are entitled to the increase in their proportionate shares of any reimbursement of a portion of the 3% cost assessment funds by application and recovery of the Disputed 3% CBF Cost Funds.

## V.  CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure ("Rules" or, individually, "Rule"), individually and on behalf of all persons and entities that provided or paid for common benefit services, materials, and/or related expense items (the "Class").  Excluded from the Class are Defendants.

43.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The requirements of Rule 23(a) are satisfied because Class members are sufficiently numerous and geographically dispersed so as to make joinder of all members of the Class impracticable.  There are thousands of Class members dispersed throughout the country.  The "numerosity" requirement of Rule 23(a)(1) is, therefore, satisfied.

44.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members of the Class.  Among those common questions of law or fact pertaining to the Unjust Enrichment claim are:

> (a)     whether the common benefit services, materials and/or related expense items provided and paid for by Class members conferred a benefit on Defendants;

> (b)     whether Defendants accepted the benefits provided;

> (c)     whether the Defendants accepted the benefits provided under circumstances that would make retention without payment unjust.

Similarly, among those common questions of law or fact pertaining to the Quantum Meruit claim are:

(a)    whether Class members furnished goods or services to Defendants; and

(b)    whether Defendants accepted such goods or services.

45.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the other Class members because they arise from the same course of conduct by Defendants and are based on the same legal theories – as do the claims of all other Class members.   Accordingly, Plaintiffs have satisfied the "typicality" requirements of Rule 23(a)(3) with respect to the Class they seek to represent.

46.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the other Class members relating to the claims set forth herein.   In addition, proposed class counsel has the capability and expertise to prosecute these claims on behalf of all Class members.   In fact, proposed class counsel has litigated the related Rice MDL action on behalf of all plaintiffs suing Bayer as a result of the LLRICE Contamination.

47.    **Avoidance of Inconsistent Rulings or Incompatible Standards of Conduct for Defendants – Federal Rule of Civil Procedure 23(b)(1).**  In addition, this action meets the requirements of Rule 23(b)(1).  Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.  Similarly, adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of other members who are not parties to the individual adjudications or would substantially impede their ability to protect their interests,

48.     **Federal Rule of Civil Procedure 23(b)(2).**   This action also meets the requirements of Rule 23(b)(2), in that Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Class, thereby making final injunctive relief with respect to the Class appropriate.

49.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**   A class action is the superior method for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  Class treatment will permit a sufficiently numerous group of similarly-situated persons and/or entities to prosecute their respective claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.  Furthermore, while damages to members of the proposed Class are substantial in the aggregate, the damages to any individual member of the proposed Class may be insufficient to justify individually controlling the prosecution of separate actions against Defendants.  Even if members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the claims asserted by Plaintiffs individually and on behalf of the other members of the Class, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## VI.  CLAIMS ALLEGED

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

50.     Plaintiffs incorporate the allegations set forth in paragraphs 1-49 as if fully set forth herein.

51.     As a result of the common benefit services, materials and/or related expense items provided or paid for by the Class and as described above, on behalf of all plaintiffs and their counsel in all of the LLRICE-related actions – including Defendants' state court cases – the Class conferred a benefit on Defendants, who received, appreciated and accepted such benefit.

52.     It would be unjust to allow Defendants to retain this benefit at Class's expense.

53.     Indeed, this Court has already found that Defendants have received a benefit and have been unjustly enriched thereby.  Defendants are bound by those findings and/or estopped from contending to the contrary.

54.     As a result of Defendants' unjust enrichment, Plaintiffs and the other members of the Class are entitled to restitution from Defendants in the amount equal to 11% of the gross recovery against Bayer (whether by judgment, settlement, or otherwise), by each of the Defendants' clients who are not bound by the Common Benefit Order.

55.     Plaintiffs, on behalf of themselves and the Class, seek recovery of at least a portion of the amounts due under this Unjust Enrichment Claim from the Disputed 3% CBF Cost Funds.  This Court has jurisdiction over Disputed 3% CBF Cost Funds, has already found that Defendants have been unjustly enriched and can order that such funds be paid or otherwise made available to the Class members who paid the 3% common benefit cost assessment to increase their proportionate share of any excess or surplus of the 3% common benefit cost funds beyond the actual costs approved by this Court for reimbursement.

## COUNT II
## QUANTUM MERUIT
### (On Behalf of Plaintiffs and the Class)

56.     Plaintiffs incorporate the allegations set forth in paragraphs 1- 55 as if fully set forth herein.

57.     In addition, or in the alternative to Count I, Plaintiffs assert this claim for Quantum Meruit on behalf of themselves and the Class.

58.     As this Court has already found, the Class provided a significant amount of common benefit services, materials and/or related expense items to all counsel representing plaintiffs who brought claims against Bayer arising out of the LLRICE Contamination, including Defendants.

59.     Defendants accepted these common benefit services, materials and/or related expense items and benefitted from them in all of their cases, including when representing clients outside of the Rice MDL.

60.     As a result of Defendants' acceptance of the Class's common benefit services, materials and related expense items for the benefit of their clients outside of the Rice MDL, the Class is entitled to restitution in an amount equal to 11% of the gross recovery against Bayer (whether by judgment, settlement or otherwise), by each of the Defendants' clients who are not bound by the Common Benefit Order.

61.     Plaintiffs, on behalf of themselves and the Class, seek recovery, in at least partial satisfaction, of the amounts awarded under these Quantum Meruit Claims from the Disputed 3% CBF Cost Funds.

## COUNT III
## INTERPLEADER
### (Asserted by Plaintiffs as Co-Trustees of the CBF Trust)

62.     Plaintiffs incorporate the allegations set forth in paragraphs 1- 41 as if fully set forth herein.

63.     Defendants and members of the Class have made adverse claims to the Disputed 3% CBF Cost Funds.

64.     The Class members who have asserted claims to the Disputed 3% CBF Cost Funds include plaintiffs' law firms who have asserted such claims on behalf of their clients or their firms to the extent they bore or paid for their clients' contributions to the 3% common benefit cost fund, as well as some members of the Leadership Group, or their firms, who have similarly asserted such claims on behalf of their clients or their firms to the extent they bore or paid for their clients' contributions to the 3% common benefit cost fund.

65.     Plaintiffs, in their capacity as Co-Lead Counsel in the Rice MDL and as proposed class representatives in this action, have an interest adverse to Defendants with respect to the Disputed 3% CBF Cost Funds.

66.     Accordingly, Plaintiffs in their capacity as Co-Trustees of the CBF Trust, are exposed to double or multiple liability with respect to the Disputed 3% CBF Cost Funds and seek to join for purposes of interpleader, under Rule 22, FED.R.CIV.PROC., all those making claims to those funds, including specifically Plaintiffs, in their capacity as Co-Lead Counsel in the Rice MDL, individually and on behalf of the Class defined herein, and Defendants.

## VII.   REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

A.     By Plaintiffs, on behalf of themselves and the Class:

1.  Ordering restitution, and specifically requiring Defendants to return the monies unjustly retained by them, in the amount of 11% of the gross recovery against Bayer (whether by judgment, settlement or otherwise), by each of the Defendants' clients who are not bound by the Common Benefit Order; and that Plaintiffs, in their capacity as Co-Lead Counsel, individually and on behalf of the Class, be permitted to recover, in at least partial satisfaction, such amounts from the Disputed 3% CBF Cost Funds to the extent such funds may satisfy, at least in part, the Court's judgment, and that Plaintiffs recover any unpaid balance after application of the Disputed 3% CBF Cost Funds from Defendants, individually and jointly and severally; and,

2.  Pre-judgment and post-judgment interest at the maximum rates permitted by law.

B.  By Plaintiffs, in their capacity as Co-Trustees of the CBF Trust:

1.  A judgment, upon Plaintiffs' Complaint for Interpleader, asserted in their capacity as Co-Trustees of the CBF Trust, joining for purposes of interpleader, under Rule 22, FED.R.CIV.PROC., all those making claims to those funds, including specifically Plaintiffs, in their capacity as Co-Lead Counsel in the Rice MDL, individually and on behalf of the Class defined herein, and Defendants; and

C.      For such other equitable relief as this Court deems just and proper.

Dated:     January 31, 2013

GRAY, RITTER & GRAHAM, P.C.


By:  /s/  Don M. Downing
Don M. Downing
Gretchen Garrison
Jason Sapp
701 Market Street, Suite 800
St. Louis, Missouri  63101
Tel:  (314) 241-5620
Fax:  (314) 241-4140
ddowning@grgpc.com
ggarrison@grgpc.com
jsapp@grgpc.com

GRANT & EISENHOFER P.A.


By:  /s/  Adam J. Levitt
Adam J. Levitt
826 West Oakdale Avenue
Chicago, Illinois  60657
Tel:  (773) 412-9608
Fax:  (773) 360-8644
alevitt@gelaw.com

Stacey Kelly Breen
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue, 10th Floor
New York, New York  10016
Tel:  (212) 545-4600
Fax:  (212) 545-4653

Richard J. Arsenault
Jennifer Hoekstra
NEBLETT BEARD & ARSENAULT, LLP
2220 Bonaventure Court, P.O. Box 1190
Alexandria, Louisiana  71301
Tel: (800) 256-1050
Fax: (318) 561-2591

William Chaney
James L. Reed
William J. French
Michael Kelsheimer
Drew York
**LOOPER REED & MCGRAW**
1601 Elm Street, Suite 4100
Dallas, Texas  75201
Tel:  (214) 237-6403
Fax:  (214) 953-1332

Scott A. Powell
**HARE WYNN NEWELL & NEWTON**
2025 3rd Ave. North
Suite 800
Birmingham, Alabama  35203
Tel:  (800) 568-5330
Fax:  (205) 324-2165

Grant L. Davis
Shawn Foster
**DAVIS BETHUNE & JONES**
City Center Square
1100 Main Street, Suite 2930
Kansas City, Missouri  64105
Tel:  (816) 421-1600
Fax:  (816) 472-5973

708853