**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) ) | Case No. 4:06MD1811 CDP |
| | ) | |
| GRAY, RITTER & GRAHAM, P.C., WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC, AND GRAY REED & MCGRAW, P.C., on behalf of themselves and those similarly situated; | ) ) ) ) ) ) ) | Case No.  4:13-cv-00206 CEJ |
| and | ) ) | |
| Don M. Downing and Adam J. Levitt, as Co-Trustees of the Common Benefit Trust Fund | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GOLDMAN PHIPPS PLLC, GOLDMAN PENNEBAKER & PHIPPS, P.C., PHIPPS CAVAZOS PLLC, MIKAL C. WATTS, P.C., KELLER STOLARCZYK PLLC, MARTIN J. PHIPPS, MIKAL C. WATTS, BANKS LAW FIRM PLLC, CHARLES A. BANKS, STEPHEN B. MURRAY, SR. and MURRAY LAW FIRM | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

Having waived any challenge to this Court being an improper venue to litigate Plaintiffs'

claims in this case,[1] Defendants now ask this Court to split this case in two or possibly three

parts and transfer the parts to the Eastern District of Arkansas and/or the Western District of

---

[1] *See* Fed. R. Civ. P. 12(b)(3), (h)(1)(A), (g)(2).

Texas, and to the Eastern District of Louisiana, all in the name of convenience and justice. Even though they concede that some of the important goals of 28 U.S.C. § 1404(a) are judicial economy and consistency, they nonetheless purport to split this case into at least two judicial forums with no prior history or understanding of the matters involved. It is beyond self-evident that this Court among all other federal courts, with its specialized and historical knowledge of the underlying Rice MDL and the related case against Riceland Foods, Inc. (Riceland), *see Downing et al. v. Riceland Foods, Inc.,* Case No. 4:1CF00321 CDP (E.D. Mo. Feb. 20, 2013), is best suited to finally and efficiently bring the claims here to resolution.

Moreover, aside from this Court's unique experiences with the Rice MDL, Defendants have failed to satisfy their burden to prove that transfer is warranted. Defendants have shown by their conduct in the Rice MDL pending in this Court that it is hardly unduly burdensome for them to litigate in this venue. Conversely, it would be highly inconvenient for Plaintiffs to litigate this matter in two or possibly three different districts instead of keeping this case intact here. Likewise, the evidence central to this case originates from Missouri and Missouri law will govern Plaintiffs' claims, so it is more practical and efficient for this Court to adjudicate this matter. Accordingly, Defendants' motion to transfer venue should be denied.

## ARGUMENT

The Court must consider three general categories of factors when deciding a motion to transfer: "'(1) the convenience of the parties, (2) the convenience of witnesses, and (3) the interests of justice.'" *Trident Steel Corp. v. Oxbow Steel Int'l, LLC*, No. 4:09CV1332 TCM, 2009 WL 3242045, at *4 (E.D. Mo. Oct. 5, 2009) (quoting *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). The Court may also consider "any other relevant factors when comparing alternative venues." *Terra Int'l*, 119 F.3d at 696. "[A] party moving for transfer under 28 U.S.C. § 1404(a) must bear the burden of showing that transfer is justified."

*Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.*, 244 F. Supp. 2d 1015, 1022 (E.D. Mo. 2002). And contrary to Defendants' misreading of the law, the Court gives deference to the plaintiff's choice of forum. *Burkemper v. Dedert Corp.*, No. 4:11CV1281 JCH, 2011 WL 5330645, at *4 (E.D. Mo. Nov. 7, 2011). Transfer is inappropriate merely to switch the inconvenience from one party to the other. *See Trident Steel*, 2009 WL 3242045, at *4 (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff....")); *American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 261 (W.D. Mo. 1980) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("[Section] 1404(a) provides for transfer 'to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.'")).

This Court is already home to related litigation involving many of the same issues pending in this case. Additionally, Plaintiffs (two of whom are Missouri residents) have chosen to litigate this matter in Missouri, the situs of Defendants' improper conduct and the evidence in this case, the place where all parties have shown the ability to litigate, and the state whose laws will apply to this dispute. Accordingly, Defendants have failed to meet their burden to "show[] that the balance of interests strongly favors transfer." *Burkemper*, 2011 WL 5330645, at *2.

**I.      The Convenience of the Parties and Witnesses Do Not Support Transfer.**

Defendants argue that it would more convenient for all involved to transfer Plaintiffs' claims against the Murray Defendants to the Eastern District of Louisiana, the claims against the Banks Defendants to the Eastern District of Arkansas, and the claims against the other defendants to the Eastern District of Arkansas or the Western District of Texas, rather than keep

this case together in this Court where related cases are pending. While it might be more convenient for Defendants to split and transfer the claims in this manner and to require the Plaintiffs to litigate these claims in multiple *fora* at additional expense in time and cost, it surely would be far less convenient for the Plaintiffs and for the judicial system as a whole.

A.     **The pendency of related cases in this Court warrants denial of transfer.**

The pendency of related litigation in this Court is a strong factor to consider in deciding whether to transfer a case pursuant to § 1404(a). *See, e.g., Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent."); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1317 (E.D. Pa. 1982) ("The existence of a related action in the transferor or transferee district is a strong factor in a transfer decision [under § 1404(a) ] where judicial economy can be achieved and duplicative litigation, with possibly inconsistent results, avoided by consolidation of actions, or by coordination of discovery and other pre-trial proceedings."); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 529 (5th Cir. 1988) (same).

This Court is already overseeing a case related to this one involving similar claims brought against Riceland. *See Downing et al. v. Riceland Foods, Inc.*, Case No. 4:1CF00321 CDP (E.D. Mo. Feb. 20, 2013). Additionally, this Court has already included this case in the underlying MDL. In doing so, the Court found that the case "involve[s] common questions of law and common questions of fact, and they are substantially related to and grew out of the MDL case that is pending before me. There is substantial overlap of the issues and the evidence, and consolidated proceedings would serve the interest of judicial economy." *See* Order, Mar. 26,

2013, Dkt No. 55 (the "March 26th Order"). Defendants fail to argue otherwise, and this fact should weigh heavily in favor of denying the instant motion. Transfer of this case, pursuant to 28 U.S.C. § 1404(a), would simply create delay, since the Court's finding in the March 26th Order would necessarily contemplate that transfer back to this Court pursuant to 28 U.S.C. § 1407 by the Judicial Panel on Multidistrict Litigation (JPML) would be appropriate. The better and more economical course for everyone is to continue in this Court, conclude discovery and prepare this case for trial pursuant to the Court's scheduling order.

**B.      The locus of the evidence is in Missouri.**

Defendants assert that the location of the evidence in this case is the state courts where Defendants *used* their unjustly received benefits. They assert that their actions in Missouri to *obtain* those benefits and Plaintiffs' work in Missouri to *create* those benefits are completely irrelevant to Plaintiffs' claims. Defendants' argument is specious given the Eighth Circuit Court of Appeals' conclusion in this case that "this litigation resulted from injuries related to *the defendants' actions in Missouri*." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 913 (8th Cir. 2014) (emphasis added).

Missouri is the epicenter of the evidence in this case because this is where the common benefit work was created and from where Defendants took it. The value of the work product will be determined by utilizing the MDL records in Missouri and Plaintiffs' testimony, including Missouri Plaintiffs Gray Ritter Graham, P.C. and Don Downing, regarding the value of that work. Moreover, as the Eighth Circuit noted, Plaintiffs' allegations of Defendants' improper conduct are not confined to the usage of Plaintiffs' work product. Rather, Defendants' refusal to pay into the Missouri based CBT Fund to compensate the lawyers that produced the benefit, and Defendants' failure in Missouri to otherwise pay the reasonable value for this benefit, are also

alleged. *Id.* Additionally, the benefits realized by Defendants led to and made possible the settlement of the rice litigation. This includes not just the cases *filed* by Defendants, but its entire inventory of cases, *including* those governed by the GMB settlement which Defendants negotiated in Missouri, thereby earning them the benefits at issue in this case. *See id.* Accordingly, much of the evidence in this case is located in Missouri.

Defendants' testimony as to their conduct in the state court cases will provide only a portion of the evidence in this case. Defendants' clients will have no evidence to provide regarding Plaintiffs' work product, and Defendants themselves fail to state what their clients would testify to that would be relevant to Plaintiffs' case and not duplicative of Defendants' testimony. *See Merrick Bank Corp. v. Savvis, Inc.*, No. 4:08CV00674 ERW, 2008 WL 5146660, at *3 (E.D. Mo. Dec. 8, 2008) ("Typically, 'the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover.'"). Defendants' generic statement that their farmer clients will testify regarding their "conduct of the State Court Actions" wholly fails to show that the farmers have any relevant information. *See* Mem., Dkt No. 135-1 through 135-4, 135-6 through 135-9 at ¶ 14. The issue here is not whether Defendants' clients were pleased with Defendants' conduct or legal representation, but whether Defendants benefited from the work done by Plaintiffs. Defendants nowhere claim that these farmers have independent and important knowledge of Defendants' use of or benefits conferred by common benefit work.

Moreover, to the extent that Defendants' non-Missouri clients have relevant testimony, it would follow that Plaintiffs' Missouri-based clients would have equally relevant testimony. While Plaintiffs do not believe this is the case, it only serves to underscore that Defendants simply seek to shift the convenience of obtaining this testimony from Plaintiffs to Defendants, an

improper basis for transfer. *See Trident Steel*, 2009 WL 3242045, at *4 (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 665); *Masco Operators, Inc. v. Thompson Tractor Co.*, No. CIV.A. G-12-152, 2012 WL 3028075, at *4 (S.D. Tex. July 23, 2012) (denying transfer where claims span multiple jurisdictions as simply shifting burden from one party to another).

As such, the convenience of non-party witnesses and the limited reach of this Court's subpoena power are irrelevant to determining the most convenient forum for this dispute. This factor does not support transfer.

### C.   Defendants have already shown that it is not unduly inconvenient for them to litigate in Missouri.

Defendants' assertions that it would be unduly oppressive for them to litigate this case in Missouri ring hollow given their many trips to Missouri to reap the benefits of Plaintiffs' hard work. In particular, Defendants took every opportunity to come to Missouri to take common benefit work produced in Missouri for their own use and benefit. Several Defendants attended MDL bellwether trials in Missouri, observing opening and closing statements, witness and expert examinations and cross-examinations, listening to argument on and obtaining jury instructions, and otherwise obtaining substantial insight into all aspects of the case. They requested and obtained transcripts and briefing from the Rice MDL in Missouri. Defendants attended hearings, status conferences, meetings, and multi-day mediations in Missouri. Some Defendants represented plaintiffs in the Missouri MDL and sought leadership positions in the case. Defendants' attendance at many of these Missouri events was for the very purpose of obtaining Plaintiffs' valuable work product. Likewise, Defendants have shown themselves amply capable of participating in litigation in Missouri through their numerous electronic filings in the MDL. *See* Dkt No. 73, pp. 6-12 and exhibits cited therein.

This Court has already observed that there is "no doubt that [the defendants] ha[d] undertaken a variety of actions in Missouri," and characterized their contacts with Missouri as "frequent and substantial." Dkt No. 102, at pp. 12, 15. The Eighth Circuit likewise agreed that Defendants had significant voluntary contact with Missouri related to Plaintiffs' allegations in this case. *See Downing*, 764 F.3d at 911-13; *see also id.* at 912 (concluding that on the issue of Missouri's personal jurisdiction over Defendants that "the convenience of the parties factor is neutral."). Accordingly, Defendants' protestations of inconvenience in participating in this litigation before this Court to answer for their actions should be rejected. Therefore, the convenience of the parties and witnesses support denying transfer of this case.

## II.     The Interests of Justice Do Not Support Transfer.

Defendants fail in their burden to establish that the interests of justice support transfer of this case to Arkansas and/or Texas and Louisiana. Missouri law will apply to Plaintiffs' claims, and Plaintiffs (two of whom are Missouri residents) chose this forum; Plaintiffs' choice is entitled to deference.

### A.     Missouri law applies to Plaintiffs' claims.

Defendants assert in a completely conclusory manner that Arkansas, Texas, or Louisiana law will apply to Plaintiffs' claims in this case, and that Missouri law will not. Defendants fail to identify any difference between these laws and Missouri law, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) (forum court may apply its own law "if it is not in conflict with that of any other jurisdiction connected to th[e] suit); nor do they perform a choice of law analysis with respect to each state's law's application to Plaintiffs' claims. Defendants' failure in these regards does not satisfy their burden to establish that this case should be transferred. In any

event, a choice of law analysis reveals unequivocally that Missouri law will apply to Plaintiffs' claims.

Missouri applies the Restatement (Second) of Conflict of Laws' "most significant relationship test."[2] *See Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994). Section 221 of the Restatement sets forth the most significant relationship test for claims seeking restitution, such as those for unjust enrichment or *quantum meruit*. *See* Restatement (Second) of Conflict of Laws § 221(1) and cmt. a.

Under that section, the following factors are to be considered in determining which state's law should apply: "(a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship, (b) the place where the benefit or enrichment was received, (c) the place where the act conferring the benefit or enrichment was done, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment." Restatement (Second) of Conflict of Laws § 221(2).

These factors indisputably point to the application of Missouri law to Plaintiffs' claims in this case: (a) the parties' relationship was centered in Missouri where the MDL was situated and where all of the common benefit work was derived; (b) Missouri is where the Defendants received Plaintiffs' work product; (c) Missouri is where Plaintiffs' common benefit work was done and conferred on Defendants; (d) the parties' residence and place of business varies, and (e) factor (e) does not appear to apply. Therefore, even if there is a material difference between Missouri law and the laws of Arkansas, Texas, or Louisiana, which Defendants have not shown,

---

[2] A "federal district court is bound to follow the choice of law rules of the state in which it sits." *J & B Co. v. Bellanca Aircraft Corp.*, 911 F.2d 152, 153 (8th Cir. 1990).

under the most significant relationship test, Missouri law will apply to this dispute. Thus, it is Missouri that has a compelling interest in seeing its laws applied to Defendants' actions and having this Court apply them. *See Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1140 (D. Minn. 2009); *see also Downing*, 764 F.3d at 912 ("Missouri has a clear interest in providing a forum for Downing, a Missouri resident.").

Additionally, Counts V through VIII of the Second Amended Complaint are brought by Co-Trustees on behalf of the CBF Trust. The CBF Trust contains a choice of law provision requiring the CBF Trust to "be administered, construed, and enforced according to the laws of the State of Missouri." *See* Rice MDL Dkt No. 2937-1 at Article Eight. Thus, for this additional reason, Missouri law will apply to these claims as well, to the extent the CBF Trust is implicated.

Accordingly, Defendants' unsupported assertion that the laws of Arkansas, Texas, or Louisiana will apply to this dispute should be rejected. The application of Missouri law to Plaintiffs' claims in this case supports denial of Defendants' motion to transfer.[3]

### B.    Plaintiffs' choice of forum is entitled to deference.

Defendants argue that Plaintiffs' choice of forum is entitled to little if any deference. To the contrary, the fact that members of the putative class reside in states dispersed throughout the country may lessen the deference given to Plaintiffs' choice of forum, but only marginally. *See C-Mart, Inc. v. Metro. Life Ins. Co.*, No. 4:13CV00052 AGF, 2013 WL 2403666, at *5 (E.D. Mo. May 31, 2013) (stating that plaintiff's choice of forum is entitled to some deference even in a class action "where members of the class are dispersed throughout the nation"). And where, as

---

[3] Even if a foreign jurisdiction's law applied here, which it does not, "[t]his Court is accustomed to applying the law of many different jurisdictions. Accordingly, this factor weighs only slightly, if at all, for transfer." *Burkemper*, 2011 WL 5330645, at *3 (citing *Crabb v. GoDaddy.com, Inc.*, No. 07-CV-4040, 2010 WL 5890625, at *3 (W.D. Ark. Mar. 29, 2010) ("federal courts routinely apply and interpret laws of other states")).

here, Plaintiffs' choice of forum is the most convenient venue for the action, Plaintiffs' choice should be given deference even where there are putative class members dispersed throughout the country.

Defendants rely heavily on *C-Mart, Inc. v. Metro. Life Insurance Co.* for their argument for transfer, but *C-Mart* is entirely distinguishable from the facts of this case. In *C-Mart* the court concluded that transfer was warranted from this district to the Southern District of Florida where the parties did not dispute that Florida would also be a convenient forum, *id.* at *3, the majority of the witnesses and evidence was located in Florida, *id.*, many of the witnesses were outside the subpoena power of the Missouri court, *id.* at *4, the TCPA violation at issue occurred in Florida, and the plaintiff had engaged in forum shopping. *Id.* at *5.

In this case, Plaintiffs do not agree that litigating this case on two or possibly three fronts, as Defendants request, would be as a convenient as litigating it here.[4] Plaintiffs also do not concede that any of the requested forums are convenient. This Court is already familiar with the underlying facts and legal issues in this case, and is current presiding over the similar matter against Riceland. Splitting the cases up (potentially creating 3 or 4 more cases) will only create judicial inefficiency, requiring additional judges to needlessly learn the complex facts and legal issues here. Moreover, creating additional cases would only raise the question of whether pretrial consolidation by the JPML under 28 U.S.C. § 1407 is appropriate. This Court has already

---

[4] Defendants make the absurd contention that Plaintiffs' own Complaint reveals that their claims against the Murray Defendants are entirely separate from their claims against the other Defendants and that therefore, any challenge to the convenience of splitting this case is unfounded, Mem., Dkt No. 135 at 13. The claims against all Defendants allege their wrongful conduct in coming to Missouri to take the benefit from Plaintiffs' hard work in the Rice MDL without paying for it. It would be hugely wasteful and inconvenient for Plaintiffs to litigate all the common issues among the claims multiple times in differing forums.

concluded that this case and the Riceland case share certain common questions of law and fact with the underlying Rice MDL.

Additionally, as shown above, the epicenter of Plaintiffs' claims and the evidence supporting those claims is Missouri. To the extent there were relevant witnesses outside the subpoena power of this Court (Defendants have not demonstrated there are any), there would likewise be relevant witnesses outside the subpoena power of any transferee Court.[5] Further, Defendants' wrongful conduct occurred in Missouri and Missouri law applies to Plaintiffs' claims.

Finally, Defendants' allegation that Plaintiffs have engaged in "the whiff of forum shopping" is a spurious allegation that has become, unfortunately, par for the course by Defendants.[6] Plaintiffs originally sought to intervene in the cases cited by Defendants in jurisdictions that Defendants suggest are more convenient to them. Defendants cannot explain how that represents forum shopping at all. It was only after intervention was denied on procedural grounds, *upon objection by Defendants*, that Plaintiffs decided to consolidate their claims in a single court. Indeed, the ground for denial in those instances was that Plaintiffs had an alternative remedy—filing a case like this one for unjust enrichment. No court ruled that Defendants were not unjustly enriched. In fact, the one judge who reached the merits explicitly

---

[5] For example, Mr. Phipps claims that relevant witnesses include "employees and agents of Goldman Phipps PLLC" and that "all witnesses…are unwilling to voluntarily appear to testify at trial" here. *See* Mem., Dkt No. 135-1 at ¶¶ 12-15. It begs the question of why his own employees and agents are unwilling to voluntarily appear in his defense. But even putting that aside, to transfer these actions outside Missouri would put Gray Ritter & Graham in the same position—its employees and agents would have to willingly travel to Arkansas to testify on behalf of Defendants.

[6] The accusation also rings rather hollow since Defendants sued Plaintiffs for a declaratory judgment in a Texas state court in the county where Mr. Watts resides and then served that complaint only after Plaintiffs filed suit here.

found that Plaintiffs were entitled to payment from Defendants. *See Kyle v. Bayer A.G.*, cv-2008-107-3, Woodruff County, Arkansas, Findings of Fact and Conclusions of Law, dated Jan. 19, 2011 at 16, attached hereto as Exhibit A. In the other two Arkansas cases in which Plaintiffs sought intervention, *Sims v. Bayer AG*, cv-2009-1183, and *Meins v. Bayer AG*, cv-2008-108, the court denied intervention with no ruling on the merits. *See* Exhibits B and C attached hereto, respectively. The court in *Meins* opined that Plaintiffs "would not be barred from bringing a separate action for unjust enrichment against the Plaintiffs, Riceland, or their attorneys." Exhibit C at 6. Plaintiffs chose to pursue all of their unjust enrichment and *quantum meruit* claims in this forum rather than piecemeal once it become clear that Defendants would erect every procedural hurdle possible to an adjudication on the merits. This does not amount to forum-shopping. Thus, *C-Mart* is inapposite and does not support transfer of this case.

## CONCLUSION

Defendants have failed in their burden to establish that this case should be split into two or three parts and transferred pursuant to 28 U.S.C. § 1404. The convenience of the parties and witnesses and the interests of justice support maintaining this case in the Eastern District of Missouri. Defendants' motion to transfer venue should be denied.

Dated: March 9, 2015

**STUEVE SIEGEL HANSON LLP**

By: /s/   Patrick J. Stueve
Patrick J. Stueve, Bar No. 37682MO
Todd E. Hilton, Bar No.51388MO
Bradley T. Wilders, Bar No. 60444MO
460 Nichols Rd., Suite 200
Kansas City, Missouri 64112
Tel:  (816) 714-7100
Fax:  (816) 714-7101
stueve@stuevesiegel.com
hilton@stuevesiegel.com
wilders@stuevesiegel.com

**PROPOSED CLASS COUNSEL**
**And ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the parties of record.

/s/   Patrick J. Stueve