UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DON M. DOWNING, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:13CV206 CDP |
| | ) |
| GOLDMAN PHIPPS PLLC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is one of several arising from disputes over fees among lawyers representing groups of plaintiffs in the genetically modified rice multi-district litigation (Rice MDL) that took place in this District. There are two groups of plaintiffs in this action. The first includes several law firms that sue on behalf of a class that provided or paid for common-benefit litigation services and materials and on behalf of a subclass that provided the services. The second group is composed of the two co-trustees of a trust that was created to reimburse the various Rice MDL plaintiffs' counsel for their collective litigation efforts. The two sets of plaintiffs assert unjust enrichment and quantum meruit claims against two groups of attorneys and law firms. The plaintiffs allege that the defendant attorneys used

the federal Rice MDL litigation materials to prosecute their own state-court claims on behalf of plaintiffs who were not subject to the federal Rice MDL orders.

Defendants have filed three motions to dismiss this case for want of subject-matter jurisdiction. First, they contend that the claims brought on behalf of a class should be dismissed because there are an insufficient number of plaintiffs to support jurisdiction under the Class Action Fairness Act (CAFA). That motion will be denied, because the pleadings and evidence provided by plaintiffs show that CAFA's requirements have been met. Second, defendants argue that prior decisions in the Rice MDL regarding jurisdiction are dispositive in this case. That ruling, however, dealt with a different jurisdictional issue in a different case; the court has CAFA jurisdiction over this case, and so that motion will be denied. Finally, defendants argue that the Co-Trustees do not have standing to assert their claims. The Co-Trustees do have standing, however, and so the third motion will be denied.

## Background

<u>Multi-District Litigation</u>

In 2006, the USDA announced that the rice supply in the United States had been contaminated by Bayer's genetically modified rice. Thousands of rice producers and non-producers filed suit against various Bayer entities in federal and

state courts. The Phipps Group[1] and the Murray Group[2] represented many of those plaintiffs in the federal and state cases. The Judicial Panel on Multidistrict Litigation transferred all pending federal cases to this court, *In re Genetically Modified Rice Litigation*, 4:06MD1811 CDP ("Rice MDL"), and Don Downing and Adam Levitt were appointed as plaintiffs' co-lead counsel. Over the course of the next several years, Gray, Ritter, & Graham, P.C., and various other firms and attorneys invested considerable time and resources into the Rice MDL cases, providing substantial benefits to other plaintiffs in the federal litigation.

On February 24, 2010, I issued an order in the Rice MDL creating a common benefit trust fund to compensate co-lead counsel and those attorneys working with co-lead counsel, who had provided common benefit services to the other plaintiffs in this litigation (the Common Benefit Order). *See In re Genetically Modified Rice Litig.*, No. 4:06MD1811, ECF No. 2574, 2010 WL 716190 (E.D. Mo. Feb. 24, 2010). In coordination with my order establishing the Fund, a trust deed was executed establishing the Genetically Modified Rice Common Benefit Qualified Settlement Fund (the CBF Trust). The Trust named

---

[1] References to the "Phipps Group" include the following defendants: Goldman Phipps PLLC, Goldman Pennebaker & Phipps, P.C., Phipps Cavazos PLLC, Mikal C. Watts, P.C., Keller Stolarczyk PLLC, Martin J. Phipps, Mikal C. Watts, Banks Law Firm PLLC, and Charles A. Banks. The members of this group are citizens of Texas and Arkansas.

[2] The "Murray Group" includes defendants Stephen B. Murray, Sr., and Murray Law Firm; they are citizens of Louisiana.

Don Downing and Adam Levitt as trustees (the Co-Trustees) and set forth the purpose of the Trust:

> [t]o provide for the compensation and litigation-related expenses of attorneys who have provided services for the common benefit of all plaintiffs in the [Multi-District Genetically Modified Rice] Litigation, . . . [and] to provide for the payment of any excess administrative costs and expenses of the [Fund] established by this same Court.
> . . .
> The purpose of the [Trust] is limited to the matters set forth herein, and this Agreement shall not be construed to confer on the Trustee any authority to carry on any business or activity for profit.

The Trust also listed five express powers of the Trustees: pay taxes and expenses, manage the assets of the Fund, hire accountants, execute documents of transfer and conveyance, and ensure compliance with Internal Revenue Code § 468B. Additional powers could be ordered by the court after hearing upon notice to all parties. ECF No. 2937-1.

The Common Benefit Order required Bayer to hold back 8% of any gross recovery by producer plaintiffs for attorneys' fees and an additional 3% of any gross recovery for common benefit costs and expenses; that money would be paid into the CBF Trust fund. At that time, I concluded that this federal court did not have subject-matter jurisdiction to order holdbacks in the state-court cases, but I urged those plaintiffs and their counsel to participate in the common benefit fund to avoid being unjustly enriched by the efforts of common benefit attorneys. I also

ordered that any funds submitted to the Trust from state court settlements or judgments would be distributed on the same basis as those from federal cases.

The Common Benefit Order was appealed to the Eighth Circuit, which affirmed: "[T]he district court does not have the power to order parties in cases not before it to contribute to the Fund." *In re Genetically Modified Rice Litigation*, 764 F.3d 864, 874 (8th Cir. 2014). In so holding, the Court of Appeals rejected arguments that equitable principles could serve as an independent basis requiring state-court plaintiffs' counsel to contribute to the CBF Trust fund. *Id.*

This Case

The two groups of attorney plaintiffs seek to recover attorney's fees and expenses they incurred in the Rice MDL. The Phipps Group and Murray Group attorney defendants obtained recoveries for clients in state-court cases that were not part of the Rice MDL and so did not contribute to the CBF Trust fund. Plaintiffs allege that the Phipps and Murray Groups used MDL common-benefit materials and work product to prosecute cases in state court on behalf of non-MDL clients.

The first four counts of the Second Amended Complaint are brought by the law firms[3] (collectively "Gray Ritter" or Class Plaintiffs) on their own behalf and

---

[3] Gray, Ritter & Graham, P.C., is a law firm incorporated in the State of Missouri and is a citizen of that state. Wolf Haldenstein Adler Freeman & Herz, LLC, is a law firm with its principal place of business in Illinois and is a citizen of Illinois, New York, New Jersey, Connecticut, and

on behalf of an alleged class and subclass. The Class is defined as "all persons and entities that *provided or paid for* common benefit services, materials, and/or related expense items" and is alleged to number in the "thousands." 2d Am. Compl. ¶ 59–60, ECF No. 128 (emphasis added). The Subclass is limited to those who *provided* the common benefit services, etc., and is alleged to number over 100. *Id.* Both Class and Subclass exclude the defendants in this action. Counts I and III assert unjust enrichment and quantum meruit claims, respectively, by the Class against the Phipps Group. Counts II and IV assert unjust enrichment and quantum meruit claims, respectively, by the Subclass against the Murray Group.

The remaining four counts are brought by the second group of plaintiffs, Don Downing and Adam Levitt, in their capacity as the Co-Trustees of the CBF Trust.[4] The Co-Trustees present unjust enrichment and quantum meruit claims against the Phipps Group (Counts V and VII) and Murray Group (Counts VI and VIII).

Defendants have filed three motions attacking jurisdiction. The first alleges that this court lacks subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") because there are fewer than 100 plaintiffs. The second contends that this court lacks subject-matter jurisdiction generally because the

---

California. Gray Reed & McGraw, P.C., is a law firm with its principal place of business in Texas, where it is incorporated.

[4] Don Downing is a Missouri citizen. Adam Levitt is a citizen of Illinois.

complaint seeks to enforce the Common Benefit Order that was entered in the Rice MDL. Finally, defendants argue that the Co-Trustees lack standing to bring claims on behalf of the CBF Trust.

## Discussion

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h). Subject-matter jurisdiction refers to the court's "statutory or constitutional power to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis omitted) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998)).

Class Action Fairness Act

Defendants' first motion requests dismissal of Counts I through IV on the grounds that there are too few plaintiffs to support CAFA jurisdiction.

Under CAFA, district courts have original jurisdiction over any civil class action in which there is (1) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (2) minimal diversity, that is, where at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2), (6). CAFA also establishes narrow exceptions to its jurisdiction, only one of which is relevant here: a court does not have jurisdiction where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5); *see also Mississippi ex rel. Hood v. AU*

*Optronics Corp.*, 134 S. Ct. 736, 740 n.1 (2014) (noting exceptions to CAFA). The number of proposed class members may be determined from the face of the complaint. *See Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 932 (8th Cir. 2013).

CAFA retained the general rule that the proponent of federal jurisdiction bears the burden of establishing jurisdiction. *See Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). Once CAFA's initial jurisdictional requirements have been established, the objecting party bears the burden of proving the applicability of any exception. *See id.* Any doubts as to the applicability of an exception are resolved against the party seeking to establish an exception to jurisdiction. *Id.*

A plain reading of Plaintiffs' Second Amended Complaint shows that the amount in controversy exceeds $5 million. ECF No. 129 at ¶ 2. Defendants are citizens of Texas, Arkansas, and Louisiana, and the Class Plaintiffs and Co-Trustees are citizens of Missouri, Illinois, Texas, New York, New Jersey, Connecticut, and California. This meets the minimal diversity requirement. *See Grupo Dataflux v. Atlas Global Group, L.P.* 541 U.S. 567, 578 n.6 (2004) ("We understand 'minimal diversity' to mean the existence of at least *one* party who is diverse in citizenship from one party on the other side of the case, . . ."). Thus, the

first two requirements for CAFA jurisdiction are met; the only question is whether there are 100 or more plaintiffs.

The Class proposed in this case consists of "all persons or entities that provided or paid for common benefit services, materials, and/or related expense items." Plaintiffs have alleged that the Class numbers in the thousands, and that the Subclass, which includes only those who "provided" such benefits, numbers over 100. The defendants have provided no evidence that the actual numbers of Class and Subclass members are below the jurisdictional threshold. Instead, they cite to a finding of the Special Master that only six law firms are entitled to further funds from the CBF Trust in the event that additional payments are made. That finding is simply not relevant to the case at bar. Courts evaluate the number of plaintiffs by what is proposed in the complaint, *Brown*, 738 F.3d at 932, and so I look to whether the proposed class exceeds 100 members.

Gray Ritter brings Counts I through IV on behalf of those who "provided" or "paid for" the Rice MDL litigation. The affidavit provided by Don Downing states that there were approximately 5000 rice producers in the Rice MDL who paid for common-benefit expenses and who would recover in this case. *See* Downing Decl. ¶ 2–3, ECF No. 154-1. That affidavit also avers that of the 34 law firms that could be considered members of the Subclass, the number of partner-plaintiffs who would be in the subclass numbers over 200. *See id.* at ¶ 4–5. Defendants have

provided no evidence that these numbers are inaccurate, and so they fail in their burden to prove that the number of plaintiffs is jurisdictionally deficient. *See Westerfeld*, 621 F.3d at 823.

Common Benefit Order

Defendants' second motion contends that no subject-matter jurisdiction exists for any of the claims because this case represents an attempt to enforce the Common Benefit Order imposed in the Rice MDL. Defendants assert that the law of the case doctrine governs this issue. They rely on my decisions in the Rice MDL and on Eighth Circuit's decision in that case that held this court lacks subject-matter jurisdiction to order parties not then before the court as part of the Rice MDL to contribute to the CBF Trust. *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873–74 (8th Cir. 2014) ("[S]tate-court cases, related or not, are not before the district court.").

This challenge to subject-matter jurisdiction is without merit. The law of the case doctrine dictates that a legal decision, once made by the court, will "continue to govern the same issues in subsequent stages *in the same case*." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted) (emphasis added). The instant action is a new case; although it relates to the Rice MDL, it is not part of that case. As discussed above, CAFA provides an independent source of subject-matter jurisdiction for this action. The Rice MDL had different parties and

presented a wholly different jurisdictional issue. The decisions in the Rice MDL do not deprive the court of jurisdiction over this case.

Standing of Co-Trustees

In their final jurisdictional motion, defendants contend that the Co-Trustees lack standing to assert Claims V through VIII. Article III of the Constitution limits federal jurisdiction to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction. *ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). To establish standing, a plaintiff must show (1) an injury-in-fact that (2) can be fairly traced to the defendant's action and (3) will likely be redressed by a favorable court decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The Co-Trustees argue that this action is an attempt to recover property of the CBF Trust, which will be used to compensate the attorneys who provided litigation services and those who paid for litigation expenses. They compare this case to *Downing v. Riceland Foods, Inc.*, 298 F.R.D. 587, 588 (E.D. Mo. 2014), in which this court held that the Co-Trustees had standing to pursue unjust enrichment claims against an entity that was a party both within the Rice MDL and in state court. *See id.* at 591–92.

Defendants first argue that the Co-Trustees have no standing because the CBF Trust has no property interest in the recoveries made by defendants' clients in

their state court cases. This argument appears to misconstrue the theory of recovery. The Co-Trustees seek damages from the defendants-lawyers – not from their clients. ECF No. 157 at 6. Essentially, the Co-Trustees argue that the CBF Trust is underfunded because the defendants failed to pay for the benefits they received – benefits that reduced the defendants' own cost of litigating on behalf of their clients. While the Second Amended Complaint requests restitution totaling 8% or 11% of the defendants' clients' gross recovery, these numbers merely reflect the plaintiffs' proposed method of calculating damages.[5]

The Trust deed did not specifically define trust property. Instead, it referenced the Common Benefit Order and stated that all contributions to the fund shall be held in trust for the payment of reasonable compensation and expenses:

> **Section 2.1** The Court has ordered the Defendants in all cases within the jurisdiction of the Court, and in each related case pending in state courts where the parties have agreed or where the court having jurisdiction of such case has so ordered, to make contributions to the Fund to the extent and for the purposes as set forth in the Order, or such further orders of the Court as may be entered after the Order which either amend, supplement, modify or otherwise replace the Order.
>
> **Section 2.2** All contributions to the Fund shall be held as a trust fund for the payment of reasonable compensation and expenses approved by the Court under the Order.

---

[5] Nothing in this Order should be construed as suggesting that the Court has determined this is an appropriate measure of damages. As defendants themselves acknowledge, this action does not seek to enforce the Common Benefit Order. Defs.' Reply Br., ECF No. 161 at 3.

Trust Deed, *In re Genetically Modified Rice Litig.*, Case No. 4:06MD1811, ECF No. 2937-1. Nothing in the Trust Deed limited the Trust Property solely to contributions from cases brought against Bayer. Any recovery obtained by the Co-Trustees in this action would not be inconsistent with the trust property as set forth in the Trust Deed.

Based on the plaintiffs' allegations, the funding shortfall is just as injurious to the CBF Trust as if the funds had been embezzled by an accountant. *Cf. In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1004 (8th Cir. 2007) (finding an injury was alleged where assets were transferred for less than fair value). The injury may be fairly traced to the defendants, for if they had contributed to the CBF Trust, the monetary deficiency would not exist. Finally, the restitution sought in this case would ameliorate the funding shortfall and enable fuller payments to the Trust beneficiaries. *Cf. In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873 (8th Cir. 2014) (holding that lead counsel had standing to appeal Common Benefit Order in part because additional funds would enable more complete payments to common benefit attorneys), *cert. denied sub nom. Phipps Grp. v. Downing*, 135 S. Ct. 1455 (2015).

Defendants argue that the Co-Trustees' actions here exceed the powers granted by the Trust Deed, which does not explicitly grant the power to sue. They

raise essentially the same argument that I rejected in *Riceland*, and that analysis remains applicable:

> Missouri law sets forth general powers that trustees may exercise except where limited by the terms of the trust. These include "(a) all powers over the trust property which an unmarried competent owner has over individually owned property; (b) any other powers appropriate to achieve the proper investment, management, and distribution of the trust property; and (c) any other powers conferred by [Missouri law]." R.S. Mo. § 456.8-815. Included among other powers granted by Missouri law is the ability to "prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties." R.S. Mo. § 456.8-816 (24).
>
> The only clause in the Trust that might be read to affirmatively limit the powers of a trustee is one that limits the purpose of the trust ["to provide for the compensation and litigation-related expenses of attorneys who have provided services for the common benefit of all plaintiffs" in the MDL] and prohibits Trustees from "carry[ing] on any business or activity for profit." However, the unjust enrichment and quantum meruit claims alleged by the Trustees further the Trust's purpose, because they would bolster the Trust's ability to compensate the beneficiaries. Moreover, the Trustees will only "profit" from this suit insofar as they are also beneficiaries of the Trust, as they provided common-benefit litigation services in the MDL. The Trust does not expressly prohibit a Trustee from bringing a claim to protect trust property, and so, under Missouri law, the Trustees have the power to bring the claims on behalf of the Trust.

298 F.R.D. at 588. The Co-Trustees have standing to bring this suit on behalf of the CBF Trust.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of jurisdiction - CAFA [# 142] is denied.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss for lack of jurisdiction – CBF Order [# 140] is denied.

**IT IS FINALLY ORDERED** that defendants' motion to dismiss Counts V through VIII for lack of subject matter jurisdiction – lack of standing [# 144] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2015.