UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DON M. DOWNING, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:13CV206  CDP |
| ) | |
| GOLDMAN PHIPPS PLLC, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This case comes before me on plaintiffs' motion for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  The proposed class members are lawyers and their clients who undertook a collective effort to litigate their claims against Bayer related to contamination of the United States rice supply by Bayer's genetically modified rice.  Plaintiffs allege that the defendant law firms used some of their own litigation work product when representing different clients in state-court cases against Bayer.  The plaintiffs seek to certify a class of all "persons and entities that provided or paid for common-benefit services, materials, and/or related expense items (except Defendant)."  They also seek to certify a subclass limited to those who "provided common-benefit services."

The proposed class satisfies Rule 23(a) and plaintiffs have shown that a Rule 23(b)(3) class is appropriate because common issues predominate over individual issues.  The central common issue in this case is whether and to what extent the defendants were unjustly enriched, and because of the way the class plaintiffs arranged their collective litigation efforts in the underlying rice litigation, that common question predominates over any questions specific to individual class members.  This action is uniquely suitable for class certification, and that form of litigation is superior to any other form.  I will grant the motion for class certification.

## I. Background[1]

### A.  Multi-District Litigation

This dispute has its origin in the continuing multi-district litigation (MDL) that began after the introduction of Bayer's genetically modified rice into the United States domestic rice supply.[2]  The spread of Bayer's rice caused the price for U.S. rice to plummet.  Thousands of Arkansas, Louisiana, Mississippi, Missouri and Texas rice farmers (referred to as "producers") and others involved in the rice business (referred to as "non-producers") filed suit against various Bayer entities in federal and state courts.

---

[1] This background is stated only for the purposes of ruling on this motion and does not relieve any party of its duty to prove facts at a later date.

[2] *See, generally*, *In re Genetically Modified Rice Litigation*, No. 4:06MD1811 CDP.

To make the MDL more manageable for the plaintiffs, this court appointed Don Downing and Adam Levitt as Co-Lead Counsel of a leadership group of attorneys. A common-benefit trust fund (the CBF Trust) was ordered established to compensate attorneys for services rendered on behalf of all the plaintiffs; Downing and Levitt were named as Co-Trustees of the Trust. That order required that a portion of any recovery obtained by plaintiffs in federal court cases be set aside and contributed to the Trust. Non-producer plaintiffs were to contribute seven percent of any gross recovery for common-benefit attorney's fees and an additional three percent for common-benefit costs.[3] The order allowed contributions to the CBF Trust to be made from recoveries in state court cases only if ordered by the state court or if plaintiffs in those cases consented.

The Co-Lead Counsel and additional attorneys at their request (collectively, the common-benefit attorneys) were directed to manage pretrial proceedings on behalf of all MDL plaintiffs. Over the course of five years, the common-benefit attorneys performed a variety of work, including, among other things, drafting a master consolidated complaint against Bayer under the laws of five states; successfully opposing Bayer's dispositive motions, reviewing, coding, and managing more than 2.8 million pages of documents; and taking or defending 167 depositions across the United States and internationally. They also conducted

---

[3] Producer plaintiffs were assessed eight percent for fees and three percent for costs.

three bellwether trials in this court; the trials resulted in plaintiffs' verdicts under the laws of Missouri, Arkansas, Mississippi, and Louisiana.

The Phipps legal team[4] opposed the creation of the CBF Trust, including the requested allocation of legal fees by the leadership counsel; the Phipps legal team sought, in the alternative, over $13 million that it claimed as reimbursement for its own common-benefit fees. Downing Decl. Ex. L, ECF No. 170-14. Stephen B. Murray, Sr., the Murray Law Firm, Charles A. Banks, and the Banks Law Firm, PLLC, objected to the creation of the CBF Trust but did not object to the Special Master's Report and Recommendation regarding payment of common-benefit attorney's fees from the CBF Trust. Downing Decl. ¶ 16, ECF No. 170-1.

On December 6, 2012, this court ordered that the common-benefit attorneys' expenses be paid from the Trust. Those expenses totaled less than the amount collected by the CBF Trust fund's three-percent cost assessment, and the Co-Lead Counsel have proposed distributing the surplus on a pro-rata basis to the contributing parties.[5] On the same date as the expenses order, this court also awarded up to $72 million in attorneys' fees. However, only approximately $56.5 million of that potential award has been obtained by the Trust.

---

[4] This group included Goldman Phipps PLLC, Martin J. Phipps, Mikal C. Watts, Mikal C. Watts P.C., and Keller Stolarczyk PLLC.

[5] Downing Decl. at ¶¶ 21, 26, ECF No. 170-1.

## B.  This Case

The named Class Plaintiffs are three law firms who incurred legal fees and advanced expenses while performing common-benefit work.[6]  They seek to represent not only other law firms but also any other persons (such as clients) who paid for common-benefit services and expenses.  In addition to the law firm Class Plaintiffs, the Co-Trustees of the Trust are also plaintiffs, suing on behalf of the Trust itself.

The Class Plaintiffs bring unjust enrichment and quantum meruit claims on their own behalf and on behalf of a class and subclass against two groups of defendants: the Phipps Group[7] and the Murray Group[8].  The class is defined as "all persons and entities that provided or paid for common-benefit services, materials, and/or related expense items . . . ." 2d Am. Compl. ¶ 59–60, ECF No. 128.  The subclass is limited to those who provided the common-benefit services.  *Id.*  Both

---

[6] The law firms named as Class Plaintiffs are Gray, Ritter & Graham, P.C., of St. Louis, Missouri; Wolf Haldenstein Adler Freeman & Herz, LLC, with offices in Illinois, New York, New Jersey, Connecticut, and California; and Looper Reed & McGraw, P.C., a Texas law firm.

[7] The Phipps Group is made up of the following law firm defendants:  Goldman Phipps PLLC, Goldman Pennebaker & Phipps P.C., Phipps Cavazos PLLC, Mikal C. Watts P.C., Keller Stolarczyk PLLC, and Banks Law Firm PLLC; as well as individual lawyer defendants Martin J. Phipps, Mikal C. Watts, and Charles A. Banks.  Martin Phipps and his firms are citizens of and headquartered in Texas.  Mikal Watts and Mikal C. Watts P.C. are citizens of Texas.  Keller Stolarczyk is a citizen of Texas.  Charles Banks and the Banks Law Firm PLLC are citizens of Arkansas.  The Phipps Group served together as co-counsel in the federal and state court genetically modified rice cases that Goldman Phipps PLLC and its predecessor law firms filed against Bayer.

[8] The defendants in the Murray Group are the Murray Law Firm and individual lawyer Stephen B. Murray, Sr.  Both are citizens of Louisiana.

Class and Subclass exclude the defendants in this action. Counts I and III assert unjust enrichment and quantum meruit claims, respectively, by the class against the Phipps Group Defendants. Counts II and IV assert unjust enrichment and quantum meruit claims, respectively, by the subclass against the Murray Group.

## II. Discussion[9]

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citations omitted); *see also Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013) (citation omitted) ("[A] plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met."). Rule 23 contains two subsections that must be satisfied.

Rule 23(a) sets out four threshold requirements for class certification: (1) sufficiently numerous parties, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) adequacy of representation. A class action plaintiff must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.*, 133 S. Ct. at 1432.

---

[9] Defendants raise a number of arguments attacking the merits of the case. In the Order of July 6, 2015, I denied the Defendants' multiple motions to dismiss and strike, which raised many of these same arguments, so I will not discuss them further here. *See* ECF No. 185.

### A. Rule 23(a) Requirements

#### A.1. Numerosity

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." To be "impracticable" does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class." *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996). The Eighth Circuit has established no specific rule as to the necessary size of a class, but it has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *vacated on other grounds*, 487 U.S. 1229 (1988).

The defendants argue that there are insufficient class members because the plaintiffs formed a single "joint venture" when they collectively litigated and divided the costs of their suit against Bayer. This argument is unavailing for a number of reasons. First and foremost, the plaintiff chooses how to craft her case. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987) ("[T]he plaintiff is the master of the complaint."). The plaintiffs have chosen to assert their multiple claims as a class, not a single claim as a joint venture.

Second, there is nothing in the record that shows the plaintiffs ever formed a joint venture. The essential elements of a joint venture under Missouri law[10] are (1) the members' express or implied agreement; (2) a common purpose; (3) "a community of pecuniary interest in the common purpose"; and (4) equal right of control over the venture. *Inauen Packaging Equip. Corp. v. Integrated Indus. Servs., Inc.*, 970 S.W.2d 360, 371 (Mo. Ct. App. 1998) (citing *Eads v. Kinstler Agency, Inc.*, 929 S.W.2d 289, 292 (Mo. App. W.D. 1996)). The plaintiffs never had equal right of control, because the leadership group and Co-Lead Counsel controlled their collective litigation efforts.

Upon consideration of these factors, I conclude that the proposed class satisfies the numerosity requirement. There are over 30 law firms that provided common-benefit legal services, and over 5000 rice producers and non-producers who had part of their settlements deposited into the CBF Trust fund to pay for fees and expenses. All would be members of the class. It is clear that joining each of the putative plaintiffs individually and trying separate suits for each would be wasteful, duplicative, and time consuming. Joinder is impracticable, and so the numerosity requirement of Rule 23(a)(1) is satisfied.

---

[10] The parties appear to agree, at least with respect to this particular issue, that Missouri law governs.

A.2.  Commonality

The commonality required by Rule 23(a)(2) is that "there are questions of law or fact common to the class."  The mere presence of factual differences will not defeat the maintenance of a class action if there are common questions of law uniting the class members' claims.  *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010).  As the Eighth Circuit held in *Paxton v. Union Nat'l. Bank*, commonality "does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  688 F.2d 552, 561 (8th Cir. 1982) (internal citations and quotation omitted).  While plaintiffs must show that there are questions of law or fact common to the class, they need not show that all issues raised by the dispute are common.  *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974).  Commonality exists only when the plaintiffs have allegedly been aggrieved by a single defendant or by several defendants acting in concert.  *Canady v. Allstate Ins. Co.*, No. 96CV0174, 1997 WL 33384270, at *4 (W.D. Mo. June 19, 1997), *aff'd sub nom. Canady v. Allstate Ins. Co.*, 162 F.3d 1163 (8th Cir. 1998).

Defendants admit that, under the plaintiffs' collective-effort theory, the plaintiffs' class and subclass satisfy the commonality component.[11] This court agrees. Here, all plaintiffs will face a common legal question: whether an unjust enrichment or quantum meruit action may be based upon the use of an attorney's work product by another attorney. They also will face the common issue of whether collateral estoppel will attach to this court's previous statements that state-court plaintiffs (and, hence, their attorneys) received "substantial benefits" from the common-benefit work.[12] The defendants within each group are alleged to have acted in concert: the members of the Phipps Group served as co-counsel, and the Murray Group is composed of a law firm and its owner/member. The fact issues regarding whether the defendants used and benefitted from the common-benefit work and the value of that work will be identical for each plaintiff.

### A.3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is closely tied with commonality. *Cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

---

[11] They do argue, however, that plaintiffs cannot meet Rule 23(b)(3)'s predominance requirement. That argument will be addressed below.

[12] *See, e.g.*, *Downing v. Goldman Phipps PLLC*, No. 4:13CV206 CDP, 2013 WL 1991531, at *1 (E.D. Mo. May 13, 2013), *rev'd and remanded*, 764 F.3d 906 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1464 (2015).

157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). "Typicality" means that there are "other members of the class who have the same or similar grievances as the Plaintiff[s]." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977) (citations omitted). The named plaintiffs and the class members may be said to have similar grievances if they have been subjected to the same allegedly unlawful treatment. *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995).

Here, each of the proposed class members would have essentially the same grievances as the named plaintiffs – that the defendant attorneys have unjustly benefitted from work paid for or provided by plaintiffs. I find that typicality has been established.

### A.4.  Adequate Representation

The adequacy of representation requirement under Rule 23(a)(4) seeks to discover conflicts of interest between named representatives and the class they seek to represent. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). A class representative must be part of the class, possess the same interest, and suffer the same injury as the prospective class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Here, the Class Plaintiffs have allegedly suffered the same harm and have the same interests as the prospective class members: they have provided services

and/or paid for legal expenses as part of a pooled litigation group, and they have not been reimbursed for the use of those materials by the defendant attorneys. The Class Plaintiffs have retained a third-party law firm with a record of successful complex-litigation experience to represent the class in this suit, and there are no allegations of a conflict of interest between the Class Plaintiffs and the proposed class. I find that the adequacy component of Rule 23(a)(4) is satisfied.

### B.  Rule 23(b) Requirements

Plaintiffs assert that this class is appropriate for certification under either Rule 23(b)(3) or 23(b)(1). To certify a class action under Rule 23(b)(3), the court must find that: (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### B.1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). When determining whether common questions predominate, the court must conduct a "limited preliminary inquiry" to gauge whether, if the plaintiffs' allegations are true, common evidence could establish a prima facie case for the class. *Blades v. Monsanto Co.*, 400 F.3d 562,

566 (8th Cir. 2005) (citations omitted).  If making a prima facie case requires that members of the proposed class must present different evidence for each member, then it is an individual question.  *Id.*  Courts are less likely to find that common issues predominate when the governing law varies widely amongst class members.  *Cf. In re Bisphenol-A (BPA) Polycarb. Plastic Prods. Liab. Litig.*, 276 F.R.D. 336, 346 (W.D. Mo. 2011) (noting the complications inherent in applying differing laws).

The parties give some attention to which state's laws should apply, but I find that an ultimate choice of law determination is not necessary at this stage in the litigation.  The plaintiffs' collective litigation efforts were coordinated from Missouri on orders from this Court entered in Missouri, and they paid into and were reimbursed from the CBF Trust that was established in Missouri.  Thus, although the plaintiffs themselves are citizens of multiple states, Missouri served as a proto-clearing house for the plaintiffs' collective work that is the subject of this case.

Defendants do not contest Missouri's status as the hub of the plaintiffs' collective efforts.  Instead, defendants point to substantive differences in the laws of Missouri, Arkansas, Louisiana, and Texas and argue that the laws of the latter three states should apply.

The potential number of states' laws that can be applied is already limited by the nature of the plaintiffs' collective action.  It is further limited when considering that the claims are divided into class and subclass.  The claims of the subclass are directed solely against the Murray Group, which is based entirely out of Louisiana.  Thus, with respect to the subclass, the applicable law is restricted to one of two states:  Louisiana or Missouri.   The law governing the claims of the class is similarly restricted.  The Phipps Group argues that the claims against it should be subject to the laws of Arkansas and Texas.  Even if the laws of both states were applied, the claims of the class would at most require application of two states' laws.[13]  The number of potential legal standards is not so many that they would overshadow the common issues presented in this case. *Contrast Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (ordering decertification of class of asbestos plaintiffs from across the country after finding the application of a choice of law analysis to each plaintiff's claim exponentially compounded the individual factual and legal issues).

Defendants also argue that individual questions predominate because the plaintiffs' claims will require an inquiry into the specific legal work performed or paid for by each class member.  I do not agree that this kind of individualized fact-finding will be required.  By pooling their resources, the MDL plaintiffs and their

---

[13] The same may be said if Missouri were to substitute for either Texas or Arkansas.

lawyers achieved a great deal of efficiency in the prosecution and ultimate settlement of all their MDL claims.  Because they undertook this joint approach to the underlying litigation, they will not have to show that each individual class member provided or paid for specific things – instead they can show that they jointly incurred the expenses that conferred a benefit on the defendants.

This case is easily distinguished from *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1036 (Okla. 2006), relied on by the defendants.  That case involved a failed attempt to certify a class of plaintiffs defined as consumers who had each contracted for oil changes and been charged a set fee for supplies, regardless of what actual supplies had been used. *Id.* at 1031.  The court held that individual issues predominated, because the unjust enrichment claim required plaintiff-specific inquiries into what supplies were used, the cost of the supplies, what the customer was told, and whether the customer agreed to pay the fee, among others.  *Id.* at 1036.  Notably, the plaintiffs in *Harvell* had not pooled their resources, but instead operated individually when they took their cars in to be serviced.

The *Harvell* inquiries necessarily dealt with each plaintiff on an individual basis.  Here, individual attorneys and law firms created work product, but each service was provided as part of a collective effort on behalf of all the MDL plaintiffs to prosecute the MDL.  To the extent that any defendant used any

particular piece of work product, the plaintiffs need only show that they created that work product as part of the collective effort. The same may be said for the common-benefit expenses. So far as any particular plaintiff was harmed by the defendants' use of the materials, the entire class was harmed.

These claims do require evidence of the defendants' use of the plaintiffs' common-benefit materials, including the circumstances surrounding that use, and the value of the benefit thereby obtained.[14] That evidence will necessarily be individualized as to the particular defendants or groups of defendants. But as to

---

[14] *Cf. El Paso Prod. Co. v. Blanchard*, 269 S.W.3d 362, 372 (Ark. 2007) (proving unjust enrichment requires a defendant to have received something of value, to which he is not entitled, under equitable circumstances that require restitution); *Sanders v. Bradley Cnty. Human Servs. Pub. Facilities Bd.*, 956 S.W.2d 187, 190 (Ark. 1997) (noting that quantum meruit claims are treated as unjust enrichment and measured by value of benefit conferred); *Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo. Ct. App. 2007) ("[Q]uantum meruit claim[s require proof] that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, that the materials or services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services."); *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("To recover under quantum meruit a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged."). Like Arkansas, Louisiana does not recognize quantum meruit as an independent basis for recovery and instead construes the claims as an action in unjust enrichment, *Fogleman v. Cajun Bag & Supply Co.*, 638 So. 2d 706, 709 (La. Ct. App. 1994), of which there are five elements: (1) an enrichment, (2) an impoverishment, (3) a causal relationship between the two, (4) the absence of justification for the enrichment or impoverishment, and (5) no other remedy at law. *Id.* at 710.

the plaintiffs, those inquiries remain common to the class and subclass as a whole, as does the question of whether and to what extent language used in previous orders is relevant or has any effect on the elements to be proved. Common issues predominate, and so the first requirement under Rule 23(b)(3) is satisfied.

### B.2.   Superiority of Class Resolution

The final inquiry to certify a class under Rule 23(b)(3) looks to whether class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Factors include (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *Id.*

These factors demonstrate the superiority of class resolution. The class members lack any interest in individually prosecuting separate actions. The MDL is based in this court, and I am familiar with my own common-benefit orders upon which the class plaintiffs base many of their arguments. Finally, any difficulties in managing this class action are dwarfed in comparison to the alternative.

I will certify this class under Rule 23(b)(3), and so I do not need to reach the Rule 23(b)(1) arguments.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for class certification [#170] is granted.

**IT IS FURTHER ORDERED** that Class Plaintiffs Gray, Ritter & Graham, P.C., Wolf Haldenstein Adler Freeman & Herz, LLC, and Looper Reed & McGraw, P.C., are appointed as class representatives to represent the following class:

> All persons and entities that provided or paid for common-benefit services, materials, and/or related expense items (except Defendants),

They are also appointed to represent the following subclass:

> All persons and entities that provided common-benefit services (except Defendants).

**IT IS FURTHER ORDERED** that Patrick J. Stueve, Todd E. Hilton, and Bradley T. Wilders, of Stueve Siegel Hanson LLP, 460 Nichols Rd. Suite 200, Kansas City, MO 64112, are appointed as Class Counsel.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of July, 2015.