**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| GRAY, RITTER & GRAHAM, P.C., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>GOLDMAN PHIPPS PLLC; GOLDMAN PENNEBAKER & PHIPPS, P.C.; PHIPPS CAVAZOS PLLC; MIKAL C. WATTS, P.C.; KELLER STOLARCZYK PLLC; MARTIN J. PHIPPS; MIKAL C. WATTS; BANKS LAW FIRM PLLC; CHARLES A. BANKS; STEPHEN B. MURRAY, SR.; and MURRAY LAW FIRM,<br><br>    Defendants. | Case No. 4:13-cv-00206 CDP |

**PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE AND
PRELIMINARY APPROVAL OF
CLASS SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiffs Don M. Downing and Adam J. Levitt, on behalf of the Common Benefit Trust; Gray, Ritter & Graham, P.C.; Wolf Haldenstein Adler Freeman & Herz LLC; and Gray Reed & McGraw, P.C. ("Named Plaintiffs"), move the Court for its Order (1) preliminarily approving their Settlement Agreement and Release (the "Settlement") with Defendants Mikal C. Watts, P.C. and Mikal C. Watts, and non-Defendants Watts Guerra LLP and Francisco Guerra, IV (collectively, "Watts") in this certified class action, (2) directing notice of class certification and settlement, and (3) setting a hearing under Federal Rule of Civil Procedure 23(e). Rule 23(e) directs that claims in "a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A proposal binding class members may

only be approved "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Courts generally employ a two-step process when reviewing proposed class action settlements. The Court first performs a preliminary inquiry into the terms of the settlement. Once satisfied there is a plausible basis to approve the settlement, the Court directs notice and allows class members an opportunity to opt out of the case or object to its terms and conditions. Following the opt-out and objection deadlines, the Court holds a final fairness hearing required by Rule 23(e), and issues an order addressing the fairness, reasonableness, and adequacy of the settlement.

This case now comes to the Court at the first step of the Rule 23(e) approval process—*i.e.*, preliminary approval and issuance of court-authorized notice of class certification and settlement. The Settlement more than satisfies the plausibility inquiry required at this stage. The Settlement has a value to the Class of at least $350,000.00.  First, Watts have agreed to pay $350,000.00 to settle the claims in this case. Second, they have also agreed to assign back to the Genetically Modified Rice MDL Common Benefit Trust (the "Trust") all rights to any refund of monies paid into the Trust. Additionally, Watts have agreed to provide affidavits and testimony at Plaintiffs' discretion, which has significant—but incalculable—value.  For these reasons, and the reasons set forth below, the Named Plaintiffs respectfully request the Court's Order (1) preliminarily approving the Settlement, (2) directing notice to all members of the certified class and subclass ("Class Members"), and (3) scheduling a final fairness hearing as soon as

practicable, but no earlier than 100 days from the date of this motion.[1]  For the Court's convenience, a proposed, agreed Order is submitted with this motion as **Exhibit A**.

## TERMS OF THE SETTLEMENT

**I.     Summary of the Claims and Background.**

This case involves the collective work of a group of attorneys who, pursuant to court appointment, prosecuted claims on behalf of thousands of plaintiffs ("common-benefit attorneys") in an underlying multi-district litigation. Those attorneys pooled their resources and their time to produce work pursuant to Court order. In doing so, they collectively conferred a benefit upon other attorneys representing similarly situated plaintiffs who had access to and used that work product but did not contribute or pay for its creation, including the Defendants in this action. The Defendants settled their clients' cases as part of a Global Settlement Agreement that was the result of the work performed by the common-benefit attorneys. This work ("common-benefit work") performed by the common-benefit attorneys (members of the Class and Subclass here) was foundational to the claims of all plaintiffs, including the claims that were prosecuted by Defendants in this action.

The Named Plaintiffs are three law firms who incurred legal fees and advanced expenses while performing common-benefit work. They have brought claims for unjust enrichment and *quantum meruit* on their own behalf and on behalf of the Class Members against the law firms and individual attorneys that used the common-benefit work but refused to pay for it.

For almost four years, the Parties have vigorously litigated a multitude of issues, including on appeal. The Parties are also presently engaged in extensive discovery in preparation for trial in May 2017. The Parties are still engaged in additional fact discovery and are in the

---

[1] The Class Action Fairness Act ("CAFA"), 29 U.S.C. § 1715(d), requires that a final approval order cannot be "issued earlier than 90 days after" notice is served on appropriate state and federal officials, which will occur no later than 10 days after the date this motion is filed.

initial stages of expert discovery.  Plaintiffs have now reached an agreement to settle their claims against Defendants Mikal C. Watts, P.C. and Mikal C. Watts, and non-Defendants Watts Guerra LLP and Francisco Guerra, IV.  Plaintiffs believe settlement with Watts is appropriate at this time because Watts has agreed to pay significant value to the Class, had more limited involvement in the allegations at the heart of this litigation as primarily a financier for the Phipps Group, and there are concerns about recoverability of any ultimate judgment against Watts.  The Settlement has since been incorporated into a formal Settlement Agreement and Release, which is attached as **Exhibit B**.

## II.    Settlement Terms.

Within thirty days of the Effective Date[2] of the Settlement, Watts will wire transfer $350,000.00 (the "Settlement Fund") into an Escrow Account established by the Trust. **Exh. B** at ¶ 8. Watts also will assign back to the Trust all ownership, right, title and interest to any refund of monies paid into the Trust (the "Assignment"). The Assignment includes, but is not limited to, any refund available to other beneficiaries of the Trust because the expenses incurred by the Trust did not exceed the amount collected. On the Effective Date, all Plaintiffs' and Class Members' claims against Watts in this action, and all Watts' claims against Plaintiff and Class Members, will be released and dismissed with prejudice. *Id.* at ¶¶ 26-27. Disbursements from the Settlement Fund may be made to (a) pay any taxes, fees, or costs due on the account; (b) pay

---

[2] "Effective Date" means the date by which all of the following events have occurred: (i) Class Counsel and Watts have executed the Settlement; (ii) the Court has entered the Final Approval Order; and (iii) the time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has expired. The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amounts that Class Counsel requests in their forthcoming Fee Request. Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the fees awarded to Class Counsel. **Exh. B**, at ¶ 5.

Class Members who do not timely opt-out of the Settlement ("Settlement Class Members," *id.* at ¶ 7); (c) pay fees and expenses to Class Counsel, as approved by the Court; and (d) pay costs related to Settlement or Notice Administration. *Id.* at ¶ 11. Watts agrees not to oppose or object to Plaintiffs' recommendation as to how to distribute or allocate the Settlement Fund or how costs or expenses are allocated from the Settlement Fund or Trust, which shall be exclusively determined by the Court. *Id.* at ¶ 10.

Settlement Class Members are *not* required to submit a claim to receive payment from the Settlement Fund. Notice of the settlement ("Class Notice") will be distributed by the Settlement Administrator by electronic mail, direct mail, and publication on a Settlement Website set up by the Trust. *Id.* at ¶¶ 13, 19. After the Effective Date, the Trust will distribute funds to Settlement Class Members.

Class Members are afforded 30 days from the issuance of the Class Notice to opt out of this action. *See* **Exh. B** at ¶ 17; **Exh. A** at ¶ 10. Settlement Class Members may file objections to the Settlement, also within 30 days. **Exh. B** at ¶ 18; **Exh. A** at ¶ 10.

## ARGUMENT

**I.     The Class was already certified.**

Because a settlement was reached after the Court granted class certification under Federal Rule of Civil Procedure 23, further analysis of the Rule 23(a) and (b) factors is unnecessary. *See* Mem. & Order Granting Class Certification, ECF No. 187; *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328 (E.D. Pa. 2014) ("At the preliminary approval stage, *if the court has not already certified the prospective settlement class*, it must 'determine that the requirements for class certification under Rule 23(a) and (b) are met.'" (emphasis added)).

**II.     Preliminary approval is warranted.**

The law favors settlement, particularly in class actions and other complex cases when substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them . . . . As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming."); *In re Charter Communications Securities Litigation*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, *4 (E.D. Mo. 2005) ("In the class action context in particular, there is an overriding public interest in favor of settlement. . . . Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (quoting *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (internal quotation marks omitted).

When, as here, parties propose to resolve class-action litigation through a class-wide settlement, they must obtain the court's approval. *See* Fed. R. Civ. P. 23(e). Class-action settlement approval involves a two-step process. First, counsel submits the proposed settlement terms so the court may preliminarily evaluate the fairness of the settlement. *See Manual for Complex Litigation* § 21.632 (4th ed. 2004) (hereafter "*Manual*"); s*ee also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2002) (hereafter, "*Newberg on Class Actions*") (endorsing two-step process); *accord Simmons v. Enterprise Holdings, Inc.*, No. 4:10CV00625 (AGF), 2012 WL 718640, at *3 (E.D. Mo. Mar. 6, 2012) (granting preliminary approval subject to receipt of objections because "the proposed terms of the Settlement Agreement are within the range of possible approval"). If the preliminary evaluation of the settlement does not disclose grounds to doubt its fairness or other obvious

6

deficiencies, and appears to fall within the range of possible approval, the court should direct that notice of a formal fairness hearing under Rule 23(e) be given to class members; at the fairness hearing, the court hears argument and considers evidence in support of, and opposition to, the settlement. *See Manual* § 21.633; *accord Simmons*, 2012 WL 718640, at *3. The notice should tell class members how they can express to the court their views about the settlement. *See id.*

### A. The Settlement negotiated by the Parties is entitled to an initial presumption of fairness.

Courts ordinarily adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg on Class Actions* § 11:41; *see also Little Rock School Dist.*, 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid"); *Petrovic v. Amoco Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor"). After the parties' arm's-length negotiations, "judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Id.* at 1148-49 (internal quotation marks omitted); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005) ("We have recognized that a class action settlement is a private contract negotiated between the parties. . . . Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair adequate, and reasonable to all concerned."); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05CV01108 ERW, 2009 WL 4782082, *3 (E.D. Mo. Dec. 8, 2009) ("a proposed settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise").

### B. A review of the applicable factors favors approval of the Settlement.

At the preliminary-approval stage, the court should "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." *Manual* § 21.632; *accord Simmons*, 2012 WL 718640, at *3. The ultimate question for the Court is "whether the settlement is within the range of possible approval," such that the class should be notified and a formal fairness hearing scheduled. *Schoenbaum*, 2009 WL 4782082 at *3; *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (the purpose of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing").

Applying the same considerations here shows the settlement exceeds the preliminary threshold for reasonableness and should proceed to a final approval hearing, at which time Class Members will have an opportunity to make their views known.

### 1. The Settlement provides meaningful monetary relief and substantially fulfills the purposes and objectives of the class action.

The Settlement provides a reasonable compromise of the Parties' claims and defenses. The Settlement has a value to the Class of at least $350,000.00.  Watts have agreed to pay $350,000.00 into the Trust to settle the claims against them and have agreed to release and dismiss their claims against Class Members in the action pending in Nueces County, Texas court. **Exh. B** at ¶¶ 8, 27. Watts also will assign back to the Trust all ownership, right, title and interest to any refund of monies paid into the Trust (the "Assignment"). The Assignment includes, but is not limited to, any refund available to other beneficiaries of the Trust because the expenses incurred by the Trust did not exceed the amount collected. Finally, Watts have agreed to provide affidavits and testimony to assist the Class, at Class Counsel's discretion.

Moreover, while Plaintiffs strongly believe in the merits of their claims, there is significant uncertainty regarding how the Court and the jury will assess the Plaintiffs' claims, the Watts Defendants' defenses, and the damages attributable to the Watts Defendants. The Watts Defendants have asserted twenty-three affirmative defenses to Plaintiffs' allegations, each of which could potentially preclude recovery. Consequently, it is possible the Class Members would recover less than the amount they allege they are entitled to in restitution, or nothing at all. Furthermore, there is inherent risk associated with the recoverability (and delay of payment) associated with any judgment against the Watts Defendants. Mr. Watts is currently defending himself in a federal criminal trial involving allegations of fraud, which includes large potential restitution penalties, and only adds to the uncertainly regarding recovery against Watts. The Settlement represents a good compromise for Settlement Class Members in light of the inherent risks, costs, and delays associated with trial and probable appeal. Accordingly, the Settlement provides meaningful relief to the Class.

### 2. The Settlement is not collusive.

No "obvious deficiencies" preclude preliminary approval of the Settlement, such that notifying the class and proceeding to a formal fairness hearing would be a waste of time. *Newberg on Class Actions*, § 11.25; *see also Schoenbaum*, 2009 WL 4782082, at *3 ("courts should consider issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys"). The Settlement does not, nor can it, disproportionally favor certain Class Members. Rather, the Settlement leaves it to the Court (upon recommendation by Plaintiffs) to determine how to distribute and allocate the Settlement Fund. **Exh. B** at ¶ 10.

Likewise, the Settlement is not conditioned on an attorneys' fee award, and any attorneys' fee and cost award is subject to separate Court approval. Furthermore, the amount of fees to be requested by Class Counsel is proportionate to the benefits enjoyed by the Settlement Class Members. More specifically, Class Counsel will seek an award based on a percentage of the Settlement Fund. *See id.* at ¶ 23. Finally, this is not a "claims made" settlement where Settlement Class Members are required to return documentation or take some other act to receive their portion of the Settlement Fund.

The Settlement was only reached after vigorous and extensive litigation. It is the product of extensive discovery, careful vetting of the risks involved, and arm's-length negotiations between experienced attorneys familiar with the complex legal and factual issues involved in the case. Additionally, the Settlement was only reached after multiple mediation sessions, in which the parties came close to agreeing on a global resolution. Class Counsel are among the country's most experienced class action attorneys and they believe the Settlement is in the best interests of each and every Class Member. In light of the risk and delay of litigation, weighed against the benefits of the Settlement, the proposed resolution is a fair, reasonable, and adequate compromise of the dispute and should be preliminarily approved. Declaration of Patrick J. Stueve, at ¶ 6, attached hereto as **Exhibit C**.

### 3. No facts exist that overcome the initial presumption of fairness that attaches to the Settlement.

Because there are no facts weighing against approval of the Settlement, the Settlement retains its initial presumption of fairness and should be preliminarily approved.

### III. Notice should issue as proposed by the Parties.

The Trust proposes that Brown Greer LLP be appointed the Settlement Administrator and hereinafter administer the Settlement and Notice Program. **Exh. A** at ¶ 13. Brown Greer has

10

significant experience in administering both claims and notice programs, including administering the settlement in the underlying LLRICE litigation. **Exh. D**. Additionally, the Trust will pay all costs and expenses associated with providing notice to Class Members. **Exh. B** at ¶ 20. Rule 23(e) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). The attached notice, agreed to by the Parties, informs Class Members, in plain English, about the consequences of participating in, and opting out of, the certified class and Settlement. *See* **Exh. E**. It discloses the key terms of the Settlement, including the amount of the Settlement Fund, all payments to be made from the Settlement Fund, the nature and extent of the release of claims, and the opt-out and objection processes. The notice will be provided by email, direct mail, and also published on the settlement website, which provides notice in a manner that is most likely to be seen by the Class Members and also ensures that the costs of the notice program are minimized. *See* Robert H. Klonoff, Mark Herrmann, & Bradley W. Harrison, Making Class Actions Work: The Untapped Potential of the Internet, 13 No. 3 J. Internet L. 1, 14 (2009) (explaining merits of providing notice via the Internet, including by email); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) (approving of notice distributed via email); *In re HP Inkjet Printer Litig.*, No. 5:05-CV-3580 JF, 2011 WL 1158635, at *3 (N.D. Cal. Mar. 29, 2011) (describing approved notice program of email distribution), *rev'd on other grounds and vacated*, 716 F.3d 1173 (9th Cir. 2013). For these reasons, the attached notice and the plan for its dissemination via electronic mail, direct mail, and publication via the Settlement Website should be approved and Class Members should be given thirty (30) days to opt out or object to the settlement. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 203 (E.D. Pa. 2014) ("It is well-settled that between 30 and 60 days is sufficient to allow class

11

members to make their decisions to accept the settlement, object, or exclude themselves.") (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 562 (D.N.J. 1997), *petition dismissed sub nom. In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570 (3d Cir. 2014); *Hester v. Vision Airlines, Inc.*, No. 2:09–cv–00117–RLH–NJK, 2014 WL 3547643, *6 (D. Nev. July 17, 2014) (noting approval of provision whereby "[c]lass members had 30 days after the postmarked date of the Notice to opt-out of the Class or file objections to the terms of the Settlement Fund").

## **CONCLUSION**

For all of the foregoing reasons, the Named Plaintiffs respectfully ask the Court for its Order granting preliminary approval of the Settlement, directing dissemination of the proposed notice, and setting a final fairness hearing as set forth in the attached proposed, agreed order.

Dated: August 15, 2016 Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

By: /s/  Patrick J. Stueve
Patrick J. Stueve, Bar No. 37682MO
Todd E. Hilton, Bar No.51388MO
Bradley T. Wilders, Bar No. 60444MO
460 Nichols Rd., Suite 200
Kansas City, Missouri 64112
Tel:  (816) 714-7100
Fax:  (816) 714-7101
stueve@stuevesiegel.com
hilton@stuevesiegel.com
wilders@stuevesiegel.com

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 15, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the parties of record.

                                        /s/  Patrick J. Stueve
                                        *Counsel for Plaintiffs and the Class*