IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GRAY, RITTER & GRAHAM, P.C., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDMAN PHIPPS PLLC; GOLDMAN PENNEBAKER & PHIPPS, P.C.; MIKAL C. WATTS, P.C.; KELLER STOLARCZYK PLLC; MARTIN J. PHIPPS; MIKAL C. WATTS; BANKS LAW FIRM PLLC; CHARLES A. BANKS; STEPHEN B. MURRAY, SR.; and MURRAY LAW FIRM,<br><br>Defendants. | Case No. 4:13-cv-00206 CDP |

### PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM IN SUPPORT

After four years of hard-fought litigation in multiple fora two Defendants, Mikal Watts and Mikal C. Watts, P.C., have agreed to settle this long-standing case on terms that provide substantial relief to the class. The settlement is set forth in a Settlement Agreement ("Agreement"), which is attached as Exhibit B [Doc. #268-2] to Plaintiffs' Preliminary Approval Motion. As described in detail in the Agreement, the settlement provides significant relief to the class in the form of monetary relief of $350,000.00 and the assignment to the Common Benefit Trust Fund of all interest in any potential refund of monies paid into the Trust. Class members are not required to submit a "claim" or otherwise perform any steps to receive this relief. The money will be deposited into the Common Benefit Trust Fund and distributed pursuant to the Court's later direction.

On September 8, 2016, the Court issued its Preliminary Approval Order, approving dissemination of notice to the class and setting January 18, 2017, as the date for the formal fairness hearing to determine whether the settlement should be finally approved. In accordance with the Preliminary Approval Order and the Agreement, notice of this litigation and the proposed settlement has been provided to the class in the manner identified in the Agreement and approved in the Preliminary Approval Order. *See* Declaration of Frank Trani, attached as **Exhibit A**.

Named Plaintiffs now move for final approval of the Settlement, and Class Counsel request an award of attorneys' fees and reimbursement of expenses. The Settlement was negotiated at arm's length by competent counsel with extensive knowledge about the factual and legal issues, who have considerable experience in litigating and resolving consumer class actions of this nature. The settlement is entitled to a presumption of fairness and is supported by all factors considered by this Circuit relevant to determining that it is fair, reasonable, and adequate as outlined below. The Parties' agreement on attorneys' fees and expenses is likewise entitled to a presumption of fairness, and moreover, Class Counsel's request is reasonable under the law.

## BACKGROUND

This case involves the collective work of a group of attorneys ("common-benefit attorneys") who, pursuant to court appointment, prosecuted claims on behalf of thousands of plaintiffs in the genetically-modified rice multi-district litigation. Those attorneys pooled their resources and their time to produce work pursuant to Court order. In doing so, they collectively conferred a benefit upon other attorneys representing similarly situated plaintiffs who had access to and used that work product but did not contribute or pay for its creation, including the Defendants in this action. The Defendants settled their clients' cases as part of a global settlement agreement that was the result of the work performed by the common-benefit

attorneys. This work ("common-benefit work") performed by the common-benefit attorneys (members of the Class and Subclass here) was foundational to the claims of all plaintiffs, including the claims that were prosecuted by Defendants in this action.

The Named Plaintiffs are three law firms who incurred legal fees and advanced expenses while performing common-benefit work. They have brought claims for unjust enrichment and *quantum meruit* on their own behalf and on behalf of the Class Members against the law firms and attorneys that used the common-benefit work but refused to pay for it.

For four years, the Parties have vigorously litigated a multitude of issues, including on appeal. The Parties are also presently engaged in extensive discovery in preparation for trial in May 2017. The Parties are still engaged in additional fact discovery and are in the midst of expert discovery. Plaintiffs have now reached an agreement to settle their claims against Defendants Mikal C. Watts, P.C. and Mikal C. Watts, and non-Defendants Watts Guerra LLP and Francisco Guerra, IV (collectively "Watts"). Plaintiffs believe settlement with Watts is appropriate at this time because Watts has agreed to pay significant value to the Class, purports to have had more limited involvement in the allegations at the heart of this litigation as primarily a financier for the Phipps Group, and, at the time of settlement, there were significant concerns about recovering a judgment against Watts.

## THE PROPOSED SETTLEMENT

On July 14, 2016 the Court granted class-action certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). Mem. & Order ("Class Certification Order") [Doc. #187]. The class is defined as "all persons and entities that provided or paid for common-benefit services, materials, and/or related expense items (except Defendants)," and a subclass is defined as "all persons and entities that provided common-benefit services (except Defendants)." *Id.* at 18.

The settlement provides significant benefits to the Class Members. Within thirty days of the Effective Date of the Settlement, Watts will wire transfer $350,000.00 (the "Settlement Fund") into an Escrow Account established by the Trust. Agreement [Doc. #268-2] at ¶ 8. Watts also will assign back to the Trust all ownership, right, title and interest to any refund of monies paid into the Trust. The assignment includes, but is not limited to, any refund available to other beneficiaries of the Trust because the expenses incurred by the Trust did not exceed the amount collected. On the Effective Date, all Plaintiffs' and Class Members' claims against Watts in this action, and all Watts' claims against Plaintiff and Class Members, will be released and dismissed with prejudice. *Id.* at ¶¶ 26-27. Disbursements from the Settlement Fund may be made to (a) pay any taxes, fees, or costs due on the account; (b) pay Class Members who do not timely opt-out of the Settlement; (c) pay fees and expenses to Class Counsel, as approved by the Court; and (d) pay costs related to Settlement or Notice Administration. *Id.* at ¶ 11. Watts agree not to oppose or object to Plaintiffs' recommendation as to how to distribute or allocate the Settlement Fund or how costs or expenses are allocated from the Settlement Fund or Trust, which shall be exclusively determined by the Court. *Id.* at ¶ 10.

Settlement Class Members are *not* required to submit a claim to receive payment from the Settlement Fund. Notice of the settlement ("Class Notice") will be distributed by the Settlement Administrator by electronic mail, direct mail, and publication on a Settlement Website set up by the Trust. *Id.* at ¶¶ 13, 19. After the Effective Date, the Trust will distribute funds to Settlement Class Members.

Class Members are afforded 30 days from the issuance of the Class Notice to opt out of this action. *See Id.* at ¶ 17; Preliminary Approval Order at ¶ 10. Settlement Class Members may

file objections to the Settlement, also within 30 days. Agreement [Doc. #268-2] at ¶ 18; Preliminary Approval Order [Doc. #282] at ¶ 10.

## ARGUMENT

### I.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

The settlement is presumed to be fair, reasonable, and adequate. "The law strongly favors settlements. Courts should hospitably receive them [because] [a]s a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming." *Little Rock School Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990). This presumption is enhanced "[i]n the class action context" where there is an "overriding public interest in favor of settlement." *In re Charter Commc'ns Sec. Litig.*, No. MDL 1506, 4:02-CV-1186, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)). While a Court is obligated to determine fairness under Rule 23, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation and quotation marks omitted). Accordingly, a class settlement is entitled to a presumption of fairness. *In re Charter Commc'ns, Inc. Sec. Litig.*, MDL 1506, 2005 WL 4045741, at *5 (E.D. Mo. June 30, 2005). This settlement, in particular, should be readily approved.

Rule 23(e) directs that claims in "a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A settlement binding class members may only be approved "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In analyzing the merits of settlement, a court's primary obligation is to ensure the settlement is not the product of fraud or collusion. *Marshall v. National Football League*, 787 F.3d 502, 509 (8th Cir. 2015). "To make that determination, the

5

district court must consider four factors: '(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement.'" *Id.* at 508 (quoting *In re Uponor, Inc. F1807 Plumbing Fitting Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Courts also regularly rely on "the opinions of the class counsel, class representatives, and absent class members." *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metropolitan Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013); *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 13333 (E.D. Mo. 1995) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 173 (5th Cir. 1983)). Here, each of the four factors and the opinions of class counsel support the approval of the settlement.

        **1.**        **The terms of the Settlement support approval when weighed against the risk of contested litigation.**

The terms of the Settlement, as weighed against the merits of plaintiffs' case, is the "single most important factor in determining whether a settlement is fair, reasonable, and adequate." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Here, the Settlement terms, when viewed in the context of the litigation, support approving the Settlement.

The Settlement provides a reasonable compromise of the Parties' claims and defenses. The Settlement has a value to the Class of at least $350,000.00. Watts have agreed to pay $350,000.00 into the Trust to settle the claims against them and have agreed to release and dismiss their claims against Class Members in the action pending in Nueces County, Texas court. Agreement at ¶¶ 8, 27 [Doc. #268-2]. Watts also assigns back to the Trust all ownership, right, title and interest to any refund of monies paid into the Trust (the "Assignment"). The Assignment includes, but is not limited to, any refund available to other beneficiaries of the Trust because the

6

expenses incurred by the Trust did not exceed the amount collected. Finally, Watts have agreed to provide affidavits and testimony to assist the Class, at Class Counsel's discretion.

Moreover, while Plaintiffs strongly believe in the merits of their claims, there is significant uncertainty regarding how the Court and the jury will assess the Plaintiffs' claims, the Watts Defendants' defenses, and the damages attributable to the Watts Defendants. The Watts Defendants have asserted twenty-three affirmative defenses to Plaintiffs' allegations, each of which could potentially preclude recovery. Consequently, it is possible the Class Members would recover less than the amount they allege they are entitled to, or nothing at all, if the case proceeds to a jury. Furthermore, there is inherent risk associated with the recoverability (and delay of payment) associated with any judgment against Watts. Additionally, non-Defendants Watts Guerra LLP and Francisco Guerra, IV can only be bound through the Settlement, as they have not been named as defendants. Finally, Watts' purported role in the underlying state-court rice cases was primarily as financier of the Phipps Group and he received a smaller share of the overall attorneys' fees received by Defendants' Goldman Phipps and Martin Phipps.

### 2. Watts' financial conditions favor approving the Settlement.

At the time of the Agreement, there was significant risk relating to Mr. Watts' financial condition that favors approval. When the Agreement was reached, Mr. Watts was preparing to defend himself in a federal criminal trial involving allegations of fraud, which included large potential restitution penalties, and only added to the uncertainly regarding recovery against Watts. While Mr. Watts has since been acquitted, the Agreement must be viewed in light of the substantial risk of non-recoverability at the time it was executed. Moreover, it is Plaintiffs' understanding that other civil claims remain pending against Mr. Watts related to the criminal allegations upon which he was acquitted that could bear on his financial condition. The Settlement represents a good compromise for Settlement Class Members in light of the inherent

7

risks, costs, and delays associated with trial and probable appeal. Accordingly, this factor favors approval of the Settlement.

### 3. Further litigation will involve continued complexity and expense.

This case involves complex and novel legal issues, which have required, and will continue to require, significant effort and expense to prosecute. "Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall*, 787 F.3d at 512 (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). This case illustrates that point. While the Settlement only resolves the claims against Watts and claims against other Defendants will continue, the Settlement will allow the Parties to avoid significant costs associated with Watts-specific fact discovery, expert discovery, and dispositive motion. The Parties will also avoid expending significant time and resources in trying the case against Watts. Although Plaintiffs' hoped to achieve a global settlement, that was not possible. It appears that this case will only be resolved short of individual settlements or trial. In this light, any settlement that minimizes the burden of further proceedings should be viewed favorably. As this Court has acknowledged, the trial in this case will have significant practical challenges to inform the jury of the basic facts in the underlying rice MDL, the underlying state-court cases, and the value of the common-benefit work to the state-court cases. Even identifying the voluminous common-benefit work that was directly offered at state-court trials will require significant time, effort, and expense.

### 4. At this stage, there is no opposition to the Settlement.

Plaintiffs have presented their motion for final approval in advance of the opt-out and objection deadline, so class members will have the opportunity to review Plaintiffs' evidence and arguments in favor of approval of the Settlement prior to making a decision to opt-out or object.

At this time, Plaintiffs are aware of no opposition to the proposed Settlement. Plaintiffs will supplement this information and respond to any objections on or before January 4, 2017.

### 5. The opinions of Class Counsel and Named Plaintiffs support approval of the Settlement.

Class Counsel and Named Plaintiffs have determined that the Settlement is in the best interests of the Class, and that it is fair, reasonable, and adequate. The Settlement was only reached after vigorous and extensive litigation. It is the product of extensive discovery, careful vetting of the risks involved, and arm's-length negotiations between experienced attorneys familiar with the complex legal and factual issues involved in the case. Additionally, the Settlement was only reached after multiple mediation sessions, in which the parties came close to agreeing on a global resolution. Class Counsel are among the country's most experienced class action attorneys and they believe the Settlement is in the best interests of each and every Class Member. In light of the risk and delay of litigation, weighed against the benefits of the Settlement, the proposed resolution is a fair, reasonable, and adequate compromise of the dispute and should be finally approved. Declaration of Patrick J. Stueve ("Stueve Decl.") ¶¶ 6, 7, attached hereto as **Exhibit B**.

The Settlement does not, nor can it, disproportionally favor certain Class Members. Rather, the Settlement leaves it to the Court (upon recommendation by Plaintiffs) to determine how to distribute and allocate the Settlement Fund. Agreement at ¶ 10 [Doc. #268-2]. Likewise, the Settlement is not conditioned on an attorneys' fee award, and any attorneys' fee and cost award is subject to separate Court approval. Furthermore, the amount of fees to be requested by Class Counsel is proportionate to the benefits enjoyed by the Settlement Class Members. More specifically, Class Counsel will seek an award based on a percentage of the Settlement Fund. *See id.* at ¶ 23. Finally, this is not a "claims made" settlement where Settlement Class Members are

required to return documentation or take some other act to receive their portion of the Settlement Fund.

Because there are no facts weighing against approval of the Settlement, the Settlement retains its initial presumption of fairness and should be finally approved.

## II.    THE ATTORNEYS' FEES AND EXPENSES REQUESTED ARE REASONABLE.

Class Counsel seek attorneys' fees equal to 25% of the Settlement. This amount is reasonable because the work of Class Counsel—along with the work of named Plaintiffs—has made a significant monetary award available to the Class. In addition, this amount is equivalent to the individual fee agreement executed by the six "enhancement firms" and the trustees for the Common Benefit Trust, further evidencing its reasonableness. Because these six firms have the largest financial stake in this litigation, their agreement on the appropriate percentage (25%) should be presumptively reasonable. *See* Stueve Decl. [**Exh. B**] ¶ 9. While not dispositive, the agreement reached between Class Counsel and the largest stakeholders in this litigation further supports approval of counsel's fee application. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (according a presumption of reasonableness to fee agreements negotiated in PSLRA context because lead plaintiff is sophisticated and had the largest financial interest).

Just like approval for the Settlement itself, the Eighth Circuit observed in considering the award of attorneys' fees in a class action settlement: "We are mindful of the limited scope of our review. We are dealing, as before, with a settlement agreement and such agreements are presumptively valid." *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990); *see Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *Heilman v. Perfection Corp.*, 93 F. Supp. 2d 1311, 1312-13 (W.D. Mo. 2000) (approving class action fee award and finding it unnecessary to

closely critique the award, which was agreed to in arm's length bargaining between counsel). "There are two generally accepted methods of calculating attorney fees: the lodestar method, and the percentage-of-the-fund approach." *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009); *see also Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("It is within the discretion of the district court to choose which method to apply."). Under either approach the requested fee is reasonable and should not be disturbed.

First, a percentage approach is reasonable because the settlement creates a "common fund." *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-82 (1980) (a litigant or lawyer who recovers a common benefit is entitled to a reasonable attorney's fee from the fund as a whole, regardless of whether some class members fail to exercise their right to possession in the fund). "[T]he Eighth Circuit has held that in common fund cases such as this one, where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees." *West v. PSS World Medical Inc.*, No. 4:13-CV-574-CDP, 2014 WL 1648741, at * (E.D. Mo. Apr. 24, 2014) (citing *Johnston*, 83 F.3d at 244-46). Moreover, the amount requested, twenty-five percent, is well within the range typically approved in percentage of recovery applications. *See, e.g.*, *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement such as this and we find no abuse of discretion in the district court's awarding 36% to class counsel who obtained significant monetary relief on behalf of the class.") (internal citations omitted); *Petrovic*, 200 F.3d at 1157 (8th Cir. 1999) (affirming district court's finding that "the proposed fee constituted 24 percent of the monetary compensation to the class, and therefore that the fee was reasonable,

particularly given that significant nonmonetary benefits are also being given to the class"); *In re Xcel Energy, Inc. Secs. Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases approving fees of 25 to 36 percent of benefit to class). [1]

Second, the lodestar approach confirms the reasonableness of Class Counsel's fee because the lodestar exceeds the amount of the requested fee.[2] *See Wiles v. Sw. Bill Tel. Co., 09-4236-CV-C-NKL,* 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (approving fee that resulted in 2.3 times lodestar as "well within reason for class action litigation"). Given the size of the fee requested at this juncture ($87,500), the Court should have no trouble determining that Class Counsel's fee is more than commensurate with the amount of work performed in the case. Class Counsel has briefed class certification, responded to Defendants' nine motions to dismiss, engaged in extensive document discovery and attended related hearings, produced each of the Named Plaintiffs and Scott Powell / Hare Wynn Newell & Newton for deposition, deposed each of the non-settling Defendants, worked with their expert to enable him to produce an expert report, and produced that expert for his deposition. Stueve Decl. [**Exh. B**] ¶ 9. Suffice it to say, the amount of fees incurred substantially exceeds the fee requested on this individual settlement with Watts.

---

[1] *See also In re LaserMaster Technologies, Inc. Sec. Litig.,* No. 4-95-631, Order (D. Minn. Oct. 10, 1997) (awarded class counsel 33 percent of the settlement fund); *Barnwell v. Corrections Corp. of America,* Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009) (awarding 33 percent of the maximum gross settlement amount); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving request for 33 percent of the settlement fund).

[2] Given that a lodestar approach is not necessary here, Class Counsel respectfully does not identify the precise amount of its lodestar because there is ongoing litigation between the Plaintiffs and the remaining defendants. To the extent a lodestar cross-check becomes relevant at a later date, such as when any requested fee *exceeds* the lodestar, and all claims are resolved against all Defendants, Class Counsel will willingly and without delay submit specific information necessary to confirm their lodestar amount. If, however, the Court determines that information would be helpful now, Class Counsel would request leave to file such information *in camera* to avoid disclosing it to the remaining defendants to whom litigation continues.

As a result of this litigation, Class Counsel have incurred $98,009 in costs and expenses. Stueve Decl. [**Exh. B**] ¶ 10. Counsel seek reimbursement of incurred costs and expenses in the amount of $19,600, which is a pro-rata approximation of the costs incurred to pursue the action against the two Settling Defendants out of the ten total Defendants. These costs and expenses were incurred on the following necessary categories: printing and copying; deposition transcripts and video; online research; and travel.  All are expenses necessarily and reasonably incurred for purposes of the case. *Id.*

## CONCLUSION

For all of the foregoing reasons, the Named Plaintiffs respectfully ask the Court for its Order granting final approval of the Settlement and granting Class Counsel's application for attorneys' fees and expenses.


Dated: September 30, 2016                               Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

By: /s/  Patrick J. Stueve
Patrick J. Stueve, Bar No. 37682MO
Todd E. Hilton, Bar No.51388MO
Bradley T. Wilders, Bar No. 60444MO
460 Nichols Rd., Suite 200
Kansas City, Missouri 64112
Tel:  (816) 714-7100
Fax:  (816) 714-7101
stueve@stuevesiegel.com
hilton@stuevesiegel.com
wilders@stuevesiegel.com

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 30, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the parties of record.

                                              /s/  Patrick J. Stueve
                                              *Counsel for Plaintiffs and the Class*