UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DON M. DOWNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13 CV 206 CDP |
| | ) | |
| GOLDMAN PHIPPS PLLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER
## REGARDING EXPERT WITNESSES

This order rules on the parties' motions to exclude or limit expert witnesses. A separate order is entered today ruling on the motions for summary judgment.

## Legal Standard

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 865 (8th Cir. 2010), (quoting *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1060 (8th Cir. 2002)). This Court must act as a "gatekeeper" to "insure that proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702 provides the standard for this Court's admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "It is well-settled that experts may not offer legal conclusions about a case." *Morley v. Square, Inc.*, No. 4:10CV2243 SNLJ, 2016 WL 1728367, at *1–2 (E.D. Mo. Apr. 29, 2016) (quoting *In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005)). With these principles in mind I review each of the motions relating to expert witnesses.

**Motion # 382: Defendants' Motion to Exclude the Testimony of Plaintiffs' Proposed Expert Witness Richard Ralston**

Plaintiffs have designated Richard Ralston, a lawyer, law professor, and retired United States Magistrate Judge, as an expert witness to testify, among other things, that defendants made use of and benefitted from work done by the plaintiffs and to testify as to the reasonable value of the materials and services. Ralston's[1] report details the history of the MDL litigation, explains the differences between the federal cases and the state cases, opines that certain attorney defendants maneuvered to file and keep their cases in state court so they would not have to contribute to the federal common benefit fund, used materials developed by

---

[1] The parties must refer to and address Ralston as "Mr." during the trial. Neither side may address him as "Judge" or refer to him as "Judge Ralston." Plaintiffs are, of course, entitled to have him explain his qualifications, including that he is a retired judge.

plaintiffs, and benefitted from those materials. He also opines on the ultimate issue that the defendants were unjustly enriched by the work of the plaintiffs.

Ralston uses three different methods for calculating plaintiffs' damages. In his first calculation he concludes that 11% of the amount for which defendants settled their state court cases reflects the market value of the benefit to them from using plaintiffs' work product. For the Phipps defendants he calculates this amount as $15,531,663.36, and for the Murray defendants he calculates the amount as $ 3,218,138.38. In his second methodology Ralston uses what he terms a lodestar method: he calculates the hours plaintiffs reasonably expended on tasks necessary to produce the work used by defendants, and then multiplies that number of hours by hourly rates. Under that method he concludes that plaintiffs are owed $14,586,775. Ralston describes his third methodology as being the profits that defendants should be required to disgorge, in the amount of $41,022,088.73.

Defendants seek to exclude Ralston's testimony on a number of bases, arguing that Ralston is opining as to legal matters that are properly the province of the court, that his 11% market valuation is improperly based on the MDL Court's determination of the amount to be contributed to the Common Benefit Fund, and that his other calculations are the product of unreliable data and improper methodology.

I will exclude Ralston's opinion that 11% of the settlement value is an appropriate measure of plaintiffs' damages for unjust enrichment or quantum meruit. Although Ralston states that this is his opinion of the "market value," he bases the value in large part on the fact that this was the amount parties to the federal MDL cases were required to contribute to the Common Benefit Fund. He provides no economic or other studies to support his conclusion that the work in this case had a market value of 11% of the settlements. He bolsters his reliance on the Common Benefit Order by pointing out that lawyers who settled their federal cases did not object to paying that amount, and that some lawyers who resolved state-court cases voluntarily contributed to the Common Benefit Fund. But as I have repeatedly stated, the 11% contribution required by the Common Benefit Order was not an attempt by the court to calculate the market value of the services, but was instead an attempt to craft a reasonable estimate, based on the suggestions of the lawyers themselves and on the percentages that had been used in other MDL cases. I will not allow Ralston to testify to this so-called "market value" as it is not based on any actual assessment of the prevailing market for the legal services at issue in this case.

Ralston's other two methods, however, are sufficient ways to calculate the benefit to the defendants of having the materials available, and so I will deny the motion as it relates to those methods of valuing damages.

4

Similarly, Ralston's description of the preparation of the legal case and the work done by the Common Benefit attorneys will be helpful to the jury, and is not improper. He may testify about what work product the defendants actually used, and he may state his opinions about the benefit to the defendants of having access to all the common benefit materials. He may not, however, give his opinion on the ultimate conclusion that it would be unjust for defendants to have used the material without paying for it. It will be for the jury to determine whether the plaintiffs have proven that defendants' use of the materials without paying was unjust, and Ralston's opinion on that point is not admissible. Additionally, Ralston may not testify about his opinion about why any defendant chose to file suit in state court, nor may he give opinions on credibility or whether any defendant acted improperly or unethically. Although some explanation of the differences between state and federal courts will be helpful for the jury to understand the background of this case, Ralston may not criticize any lawyer for choosing to file in one court or the other.

Finally, I note that Ralston may not opine on what the MDL court intended or meant by anything. He may not explain the law to the jury or give opinions on legal issues. Although the litigation and MDL processes and the Common Benefit Order are things the jurors will need to understand, parts of the Common Benefit Order itself are unfairly prejudicial, and will not be admissible. The language in the Common Benefit Order regarding unjust enrichment is dicta, and the jury will

5

not be allowed to see that or hear evidence or arguments about those statements.[2]

It would be unfair and improperly prejudicial to allow the plaintiffs to imply to the jury that I, as the trial judge in *this* case, have somehow already agreed with plaintiffs. I have not so agreed, and they may not imply that I have. In fact, I will direct that the parties may not refer to my role in the MDL case at all. Any discussions or testimony must refer only to the MDL court or the MDL judge, and if any documents are introduced that would include my initials or name, those documents must be redacted appropriately to comply with this order.

**Motion 381: Plaintiffs' Motion to Strike Expert Testimony of G. Patrick Murphy**

Defendants designated G. Patrick Murphy, retired United States District Judge for the Southern District of Illinois, as an expert witness to rebut plaintiffs' expert Richard Ralston. Murphy's report discloses his opinion that Ralston's opinions are not helpful and should not be admitted into evidence. Murphy himself indicated that he believes his own testimony is inadmissible legal opinion, but he says that if Ralston's testimony is admissible, his should be too. I have carefully reviewed Murphy's report, and conclude that none of Murphy's testimony is admissible. To the extent he responds to portions of Ralston's report that I have excluded, Murphy's opinions are no longer relevant. The rest of his

---

[2] This issue is also discussed in my order on the summary judgment motions, issued separately today, which, among other things, denies plaintiffs' motion for partial summary judgment based on issue preclusion.

report is simply legal opinion or argument, and is not helpful to the trier of fact. I will exclude his testimony in its entirety.

**Motion # 387: <u>Plaintiffs' Motion to Strike Expert Testimony of Michael Brychel</u>**

Defendants' have designated Michael Brychel as their damages expert witness. Brychel works for the legal billing management and auditing firm of Stuart, Maue, Mitchell & James, Ltd. He analyzed the charges submitted by lawyers for reimbursement from the MDL Common Benefit Fund. His opinion is that the bills submitted in the MDL case contained various deficiencies, including mathematical error, double billing and impossible charges. He also concluded that the Common Benefit attorneys used a variety of what he opines are improper billing practices, such as "block billing, unit billing of standardized charges, and fees billed in quarter or whole hour increments." He criticized the lawyers for including overhead and administrative work, for billing for transit time, and for vague descriptions of work done. He concludes that of the approximately $52 million in bills he reviewed, there were errors amounting to almost $1.5 million. He also separated out certain categories of tasks for which he opines plaintiffs in this case should not recover from defendants, including time spent on the unsuccessful class certification motion in the MDL case. All told, he questions some $20 million in bills that were submitted for payment from the Common Benefit Fund in the MDL.

Plaintiffs move to strike Brychel's testimony as irrelevant, because their damage request is not based on all the submissions to the Common Benefit Fund in the MDL case. They also challenge his methodology.

As noted above, I have ruled that plaintiffs may present two of the damage theories and calculations proffered by their expert witness, Richard Ralston. Ralston's "cost of producing" model claims damages of more than $14 million. This figure is based on some – but not all – of the documents that Brychel examined, but Brychel's opinion that some $20 million of MDL bills is improper does not address plaintiffs' claims at all. In other words, Brychel's testimony criticizes things that plaintiffs are not seeking. It seems clear that he should be able to criticize the things plaintiffs *are* seeking, but I cannot tell from his report whether it is possible to sort those things out from the whole. In various briefs and motions, the parties have indicated that Brychel produced thousands of pages of exhibits, and that he criticized numerous specific items. To the extent those items are relied on by Ralston, Brychel's testimony as to those items should be admissible. Because I cannot sort this out from the materials that have been presented, I will deny the motion to strike, without prejudice to plaintiffs' right to re-raise specific objections at trial. Defendants should understand that unless they are able to show that Brychel's testimony is actually relevant to the evidence presented by plaintiffs, I am unlikely to allow it.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants Goldman Phipps PLLC, et al. to exclude testimony of Richard Ralston [382] is granted as to the 11% opinion, but is otherwise denied, as set out more fully above.

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike expert testimony of G. Patrick Murphy [381] is granted.

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike expert testimony of Michael Brychel [387] is denied, without prejudice to be re-raised through objections at trial as appropriate.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2017.