UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DON M. DOWNING, et al.,           )
                                  )
        Plaintiffs,               )
                                  )
    vs.                           )        Case No. 4:13 CV 206 CDP
                                  )
GOLDMAN PHIPPS PLLC, et al.,      )
                                  )
        Defendants.               )

## MEMORANDUM AND ORDER
## SUMMARY JUDGMENT AND OTHER MOTIONS

This order rules a number of motions filed by the parties. The parties'
motions and briefs, including exhibits, were in excess of 25,000 pages. I have
carefully reviewed the materials filed, but find extended discussion of each motion
unnecessary. As set out below, I am denying most, but not all, of the motions.

This case remains set as the first case to be reached for jury trial beginning
on **May 1, 2017, at 8:30 a.m.** and the final pretrial hearing remains set for
**Wednesday, April 26, 2017 at 10:00 a.m.**

## Background

This dispute about attorneys' fees arising out of the *In re Genetically
Modified Rice Litigation*, 4:06MD1811CDP (the Rice MDL), is finally nearing
trial. The plaintiffs, who are lawyers and farmers who provided services and paid
expenses in the Rice MDL, bring claims of unjust enrichment and quantum meruit

against a group of attorneys who represented plaintiffs in related state-court cases but who did not contribute to the Common Benefit Fund (CBF) established in the Rice MDL.

The Rice MDL and the related state-court cases, which together included claims of thousands of farmers and others against Bayer Cropscience and related entities, were settled for approximately $750 million after a lengthy litigation process that included several federal and state trials. Two settlement agreements were entered. The settlement agreement referred to as the "Goldman Murray Banks" or "GMB" settlement is at issue here. Plaintiffs in this case are seeking contributions from defendant-lawyers whose clients participated in the GMB settlement.

The parties to the federal MDL cases were required to contribute 11% of their settlements and verdicts to a Common Benefit Fund, but the parties to the state-court cases were not so required. Despite not being required to contribute to the CBF, the lawyers to the state-court cases were allowed to access and use the discovery and other litigation materials generated in the MDL case. Some state-court lawyers voluntarily contributed to the CBF; those who are defendants in this case did not.

As part of the MDL process, leadership counsel were appointed and conducted or directed most of the discovery and other pre-trial preparation, for which they and those working under their direction were later compensated by distributions from the CBF. Some of the plaintiffs in this case were appointed as leadership counsel in the MDL. Some of the defendants in this case unsuccessfully sought to be appointed to MDL leadership positions. Some of the defendants here also unsuccessfully sought to obtain an award of fees from the CBF, for work they claimed had benefitted the MDL cases.

Defendants remaining in this case are Goldman Phipps PLLC, Goldman Pennebaker & Phipps PC, Martin J. Phipps, Keller Stolarczyk PLLC (referred to collectively as the Phipps defendants) and Stephen B. Murray, Sr. and the Murray Law Firm (referred to collectively as the Murray Law Firm).

**Motion # 369: <u>Plaintiffs' Motion for Summary Judgment based on Issue Preclusion</u>**

Plaintiffs argue, as they have argued repeatedly in this lawsuit, that I already decided many of the issues in this case when I established the MDL Common Benefit Fund and made rulings in that case related to it. Plaintiffs argue that several of my orders in the MDL case made findings of fact that are binding on the parties here. I disagree.

Issue preclusion, formerly referred to as collateral estoppel, precludes relitigation of the same issue by the same parties. *See, e.g., B&B Hardware, Inc. v.*

3

*Hargis Indus., Inc.,* 135 S. Ct. 1293 (2015); *Simmons v. O'Brien,* 77 F.3d 1093 (8th Cir. 1996). But the issues must be the same, and "central to the fair administration of preclusion doctrine is the notion that a party will be bound only if it had an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding." *Simmons*, 77 F.3d at 1095 (quotation marks omitted).

The issues in this case are not the same as the issues considered in the MDL case, and the parties did not have the same opportunity or reason to litigate them. The crucial issue involved in the dispute over the Common Benefit Order, which was affirmed on appeal, is whether the federal MDL court had jurisdiction to require non-MDL parties – those who were parties to the related state-court suits – to contribute to the Common Benefit Fund. *See In re Genetically Modified Rice Litigation,* 764 F.3d 864 (8th Cir. 2014). Although I did state, in ruling on various motions, that defendants here had benefited from the work done by the leadership group, those statements were made in the context of determining that specific issue, and, as I have told the parties before, I was using the phrase "unjustly enriched" in its generic sense and was not making any finding of future liability.

The parties in the MDL case did not have the same full and fair opportunity to litigate the issues as they have here. They did not litigate, and I did not decide, whether the plaintiff class here had conferred any particular benefit on the defendants named in this suit, or the number of hours reasonably expended to

confer such a benefit, or any of the other issues raised in plaintiffs' motion.  My

statements were not made after the full discovery and litigation, including

presentation of trial evidence, that we will have in this case.  The issues before the

court were different, and my statements did not constitute findings of fact that

should be binding on the parties here.  I will deny the motion for summary

judgment based on issue preclusion.

### Motion # 299:  Motion of Goldman Phipps PLLC et al. to Disqualify Class Representatives

Defendants seek to disqualify two of the three law firms who serve as class

representatives in this case.  Defendants hired as an expert witness a legal bill

auditor, who opined that there were inaccuracies in the MDL leadership group's

requests for reimbursement from the MDL Common Benefit Fund.  Defendants

argue that these alleged inaccuracies show that the two law firms cannot be

adequate representatives, because their credibility will be at issue and because they

have conflicts with the remainder of the class.

I will deny this motion.  First, any credibility challenges will be to the

credibility of the individual lawyers who signed the affidavits, and not to the law

firms who are the named class representatives.  One of the lawyers whose

credibility the defendants attack is no longer a member of the law firm who is the

class representative, so attacks on his credibility do not mean the law firm cannot

be an adequate representative.  Second, this case is about legal fees, and there is

plenty of room on all sides to argue about the propriety of all the lawyers' fees. Third, the defendants' expert witness made certain assumptions that call the validity of his opinions into question, and I am sure this will be an issue at trial. Additionally, the motion does not seek disqualification of the third class representative law firm, and so, as a practical matter, disqualifying two of the three class representatives is unlikely to have much practical effect. Finally, to the extent defendants argue that the class representatives have some form of conflict with other members of the class, that is not a conflict that could affect the trial – as far as the trial is concerned, all the plaintiffs share the same goal of obtaining as large a verdict as possible. If conflicts arise later as to the division of any award, that is something that can be dealt with at that time.

**Motions # 371, 374, 384: <u>Phipps Defendants' Motion for Partial Summary Judgment with Respect to Plaintiffs' Common Benefit Services Claims Relating to Public Records and Court Proceedings, with Respect to Plaintiffs' Claims for *Quantum Meruit*, and with Respect to Plaintiffs' Claims for Unjust Enrichment</u>**

**Motion # 388: <u>Plaintiffs' Motion for Partial Summary Judgment against the Phipps Defendants on Claim for Quantum Meruit</u>**

In their motion for summary judgment regarding the unjust enrichment claims, defendants argue that their mere access to the work product from the MDL litigation cannot provide a basis for relief, and that plaintiffs cannot present admissible evidence showing that there was anything unjust about defendants' use of the MDL common benefit work product. In their motion relating to the

6

quantum meruit claims, defendants argue that plaintiffs cannot prove that they performed work either at the request of or with the acquiescence of defendants. Their motion relating to public records makes similar arguments, positing that defendants could have obtained the same material from public records in the MDL cases, so it cannot be a basis for recovery under either quantum meruit or unjust enrichment.

In plaintiffs' motion for partial summary judgment on the quantum meruit claims, plaintiffs argue that they are entitled to summary judgment on liability and on two categories of damages, which are the damages plaintiffs attribute to the Phipps defendants' benefit from using plaintiffs' document review and MDL depositions. Plaintiffs seek $5,910,432.14, which they contend is the undisputed cost of producing this work product that they say Phipps undisputedly actually used.

A claim for unjust enrichment under Missouri law has three elements: 1) a benefit conferred by a plaintiff on a defendant; 2) the defendant's appreciation of the fact of the benefit; and 3) the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Petrie v. LeVan*, 799 S.W.2d 632, 634 (Mo. Ct.

App. 1990). The law of restitution is based on the conception "that no one should unjustly enrich himself at the expense of his neighbour." *Id.* at 635 n.1 (internal quotation marks and citation omitted).

Quantum meruit is a remedy for the enforcement of such a quasi-contractual obligation and is generally based on the principle of unjust enrichment. *Lucent Techs., Inc. v. Mid-West Elecs., Inc.*, 49 S.W.3d 236, 241 (Mo. Ct. App. 2001). The essential elements of a quasi-contract or quantum meruit claim are 1) that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant; 2) that the materials or services had reasonable value; and 3) that – despite the demands of the plaintiff – the defendant has failed and refused to pay the reasonable value of such materials or services. *County Asphalt Paving Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo. Ct. App. 2007).

Plaintiffs have presented evidence showing that defendants used legal work done by plaintiffs, for which defendants did not pay. This includes the document discovery and the depositions that are listed in plaintiffs' motion for summary judgment, but is not limited to that evidence. Defendants introduced MDL exhibits at their state-court trials and read MDL depositions into evidence at trial. Some of the evidence used may have been present in the public records, but some of it was not. Although defendants introduced evidence at trial that did not directly come

from the MDL case (such as the depositions that defendants themselves took), according to plaintiffs' evidence, much of the work from which defendants benefitted was not actually evidence that was introduced at trial, but consisted of discovery and legal argument that defendants did not have to do because plaintiffs had already done the work.

Plaintiffs' evidence could be viewed by a fact-finder as showing that defendants did not merely have access to materials that were in the public record, they actually took and used things that plaintiffs had created. A jury could certainly find acquiescence from this evidence, and a jury may find that this conduct was unjust. But plaintiffs' evidence is not undisputed. Defendants have presented evidence that they did much of their own work, and whether defendants were unjustly enriched by using the plaintiffs' work remains an issue for trial. Additionally, plaintiffs place a value on the document review and taking the depositions that is subject to challenge at trial. There are genuine disputes of material fact that must be resolved by the fact-finder on all these issues at trial, and I will deny these motions for summary judgment.

### Motion # 354: <u>Phipps Defendants' Motion for Partial Summary Judgment With Respect to Plaintiffs' Common Benefit Expense Claims</u>

Defendants seek summary judgment on the portion of plaintiffs' claims that seeks reimbursement for common benefit expenses. Defendants argue that plaintiffs cannot prove that they benefitted from any particular expense item.

Genuine disputes of material fact remain and mandate denial of this motion. Plaintiffs have presented expert opinion explaining how defendants benefited from being able to use the trial preparation materials generated by plaintiffs. Whether the jury chooses to believe this evidence is a question that must be left for trial. I have excluded plaintiffs' proffered expert testimony that 11% of defendants' settlements and verdicts is the reasonable value of the benefit they conferred on defendants, and plaintiffs' expert witness did not include the value of these expense items in his "cost to produce" opinion, but that does not end the claim. Plaintiffs' have produced evidence, and are entitled to produce evidence at trial, showing that they paid for many items used by defendants. For example, it is undisputed that defendants used depositions in their state court cases that had been taken by and paid for by members of the plaintiff class. Whether it was unjust for defendants to use this type of work product without paying for it is an issue for the jury.

### Motions ## 357, 363: Phipps Defendants' Motions for Partial Summary Judgment with Respect to Claims Relating to Plaintiffs' Intervention Efforts and the Failed MDL Class Certification Motion

I have excluded plaintiffs' expert opinion that 11% of the defendants' clients' total recovery is a reasonable measure of damages if plaintiffs prevail in this case. Because that opinion was the only evidence put forward by plaintiffs that would have included the work done on intervention and class certification,

defendants are entitled to partial summary judgment as to any claim relating to that work. Plaintiffs' alternative damages models of cost to produce and disgorgement do not seek recovery for time spent on the class certification and intervention motions, and so granting this summary judgment motion has no effect on those measures of damages.

### Motion # 366: <u>Phipps Defendants' Motion for Summary Judgment with Respect to Plaintiffs' Common Benefit Services Claims – Damages</u>

In this motion for summary judgment, defendants argue that plaintiffs cannot establish damages. I will deny the motion, as genuine disputes of material fact remain regarding whether plaintiffs can establish the elements, including damages, of their claims. Plaintiffs have presented admissible evidence relating to the hours reasonably expended on tasks necessary to produce the work used by defendant, and they have presented evidence of reasonable hourly rates for doing that work. Plaintiffs' evidence based on these two ways of calculating damages creates genuine factual issues for trial.

### Motions ## 379, 390, 391: <u>Motions for Summary Judgment relating to Murray Defendants</u>

Plaintiffs seek partial summary judgment against defendants Stephen B. Murray and the Murray Law Firm. Murray settled his state-court lawsuits for more than $29 million, and collected approximately $11 million in legal fees from the settlement. Plaintiffs assert that they are entitled to summary judgment based on

their expert's report, which they argue is uncontested because Murray did not retain an expert. In the alternative, plaintiffs argue that they are entitled to partial summary judgment of at least $1.7 million, because when Murray unsuccessfully applied to be part of the MDL leadership, he stated that all attorneys who benefitted from the work of leadership counsel should contribute to a common benefit fund, and he further stated that 6% of recovery was a reasonable amount to contribute.

The Murray defendants also seek summary judgment, arguing that the damages claimed by plaintiffs are based on "deeply and fundamentally flawed time and expense records." Alternatively, they argue that any damage award be reduced by 50% because they split the fees they obtained with their co-counsel who are not defendants here. In their second motion for summary judgment, the Murray defendants argue that they never used any of the work done by plaintiffs in their state-court cases and did not benefit from any of that work. They told plaintiffs that they intended to "row their own boat" in the state-court cases and, according to these defendants, that is what they did.[1]

---

[1] The Murray defendants' motions for summary judgment violate Local Rule 7-4.01(E) because they do not cite any evidence in support of their Statements of Facts. Because the motions are easily denied on the merits, however, I will not strike the Statements of Facts, but the Murray defendants are warned that further violation of the rules may result in sanctions, including, if appropriate, exclusion of evidence at trial.

Plaintiffs have presented evidence that the Murray defendants relied entirely on the discovery conducted in the MDL case, and aside from that discovery, had no other evidence against Bayer. Murray cross-noticed a number of the MDL depositions, attended some of them, and asked questions of nine of the deponents. Murray has testified that he was very careful not to access or use any MDL product in his state-court cases. Those cases were all settled as part of the GMB settlement before any of Murray's cases were set for trial in state court.

I will deny all three motions for summary judgment. As set out above, there are many disputes of fact remaining. Plaintiffs' argument that their damages evidence must be accepted as uncontested is simply wrong. To the extent their expert testimony is admissible, it creates factual issues for trial – it is not undisputed. Moreover, the statements Murray made when he hoped to be part of the MDL leadership may be admissible evidence in this case, but they do not render all the facts in this case undisputed. Similarly, both of the Murray defendants' motions for summary judgment fail for the same reason the Phipps groups' motions failed. Plaintiffs have submitted evidence sufficient to show that there are genuine disputes of fact on whether the Murray defendants used and benefitted from the work performed by plaintiffs. Plaintiffs' "cost to produce" and disgorgement theories of damage, if credited by the jury, would form a basis for valuing the work that benefited the Murray defendants. And to the extent Murray

argues that any damages should be reduced because he shared his fees with others, plaintiffs have produced evidence that could show that Murray entered into joint ventures with those others and could seek reimbursement from them. This is not a basis to reduce the damages that may be awarded against the Murray defendants.

### Motions # 287 and 375: Individual Defendant Martin J. Phipps' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment Against Martin J. Phipps on Personal Liability

In his individual motion for summary judgment, defendant Martin J. Phipps argues that all actions he took in both the federal and state cases related to genetically modified rice were taken only in his capacity as a member of his various law firms, which were professional corporations or professional limited liability companies. Because he took all actions only as part of these professional entities, he argues, he cannot be held individually liable for the acts taken by those law firms.

In their motion for partial summary judgment regarding Phipps' individual liability, plaintiffs seek partial summary judgment on Phipps' affirmative defense that the claims against him individually are barred. Plaintiffs argue that the undisputed evidence shows that Phipps personally assumed liability for this case when Goldman Phipps, PLLC was dissolved.

The procedural history of these motions is complicated. During discovery I had refused to compel the defendants to disclose how the defendant law firms

distributed the fees they received to the various individual lawyers such as Phipps.

Phipps had also refused to produce certain documents relating to the structures of

his law firms. In particular, he had not produced any of the law firm organizational

documents for his law firms and professional corporations. After Phipps filed this

motion, plaintiffs sought additional discovery, and, over Phipps' objection, were

allowed to subpoena documents from and take the deposition of Phipps' former

law partner, Larry Goldman. From that deposition plaintiffs obtained the

December 16, 2013 Dissolution and Separation Agreement of Goldman Phipps,

PLLC. In that document, Martin Phipps individually agreed that he was personally

liable for 90% of any future order requiring Goldman Phipps, PLLC to pay

common-benefit fees arising from the Rice MDL. Because the dissolution

agreement left Goldman Phipps, PLLC with no assets, Texas law required some

agreement about who would be responsible for liabilities of the firm.

Plaintiffs filed a supplemental response to Phipps' summary judgment

motion and also filed their own motion for summary judgment, providing the

evidence that had been obtained from the Goldman deposition. The Goldman

deposition took place on December 6, 2016. Plaintiffs filed their motion for

summary judgment on December 23, 2016. When Phipps filed his responsive brief

on January 20, 2017, he revealed that on January 4, 2017, the Texas Secretary of

State reinstated Goldman Phipps, PLLC, following the filing of a Unanimous

Written Consent of the Members and Managers of Goldman Phipps PLLC dated December 22, 2016.  Phipps contends that with this reinstatement, Goldman Phipps, PLLC's existence is considered to have continued without interruption from the date of termination, *see* Tex. Bus. Orgs. Code § 11.206, thereby rendering plaintiffs' argument regarding its dissolution documents moot and resurrecting Phipps' legal protection from individual liability.  Phipps' argument fails for a number of reasons.

First, in Texas, a member or manager is not liable for a debt, obligation, or liability of a limited liability company "[e]xcept as and to the extent the company agreement specifically provides otherwise."  Tex. Bus. Orgs. Code § 101.114.  As I indicated earlier, Phipps has refused to produce the organizational documents for his various law firms and professional corporations.  This alone would preclude summary judgment on Phipps' claim that the Texas statute protects him from individual liability, because he has failed to establish that the company agreements for his various LLC firms contain no exception to the statutory protection otherwise accorded LLC members and managers.

What has been produced, however – over Phipps' objection – is the dissolution and separation agreement executed in December 2013 by Goldman Phipps, PLLC and its members and owners, including defendant Phipps.  This agreement specifically and explicitly amends Goldman Phipps, PLLC's company

agreement, with the terms of the dissolution agreement to control in the event of any conflict or inconsistency with the terms of the company agreement. The terms of the dissolution agreement therefore govern the internal affairs of the PLLC, including the relations among its members, and is part and parcel of the governing structure of Goldman Phipps, PLLC. *See* Tex. Bus. Orgs. Code §§ 101.052, 101.053. The PLLC's reinstatement does not affect the governance of this agreement. *See Lighthouse Church of Cloverleaf v. Texas Bank*, 889 S.W.2d 595, 601 (Tex. App. 1994).

By its unambiguous terms, the amendment to the company agreement specifically provides for Phipps to be personally obligated to pay 90% of any common benefit fees Goldman Phipps, PLLC may be ordered to pay in connection with the Rice MDL. Because of this specific provision, Phipps does not enjoy the protection of Tex. Bus. Orgs. Code Ann. § 101.114 that might otherwise shield him from personal liability for any debt, obligation, or liability of the PLLC. His motion for partial summary judgment on this basis will therefore be denied. Plaintiffs' motion for partial summary judgment on this affirmative defense will be granted.

I must also deny Phipps' motion to the extent he claims that he acted only in his capacity with his various law firms and undertook no personal obligation during the Rice litigation. Plaintiffs have produced evidence arguably showing

that Phipps himself engaged the services of another attorney, namely Kim Keller, to work on his federal and state-court cases and that Phipps – not his firms – paid Keller $2 million for this work. Keller received no monies directly from the GMB settlement. Additional evidence shows that Phipps wanted certain payments from the GMB settlement to go directly through him and not through the Goldman Phipps firm. Because this evidence raises genuine issues of material fact regarding the extent to which Phipps undertook individual and personal action versus action taken behalf of his law firms, and whether and to what extent he personally retained any benefits from his actions, I will deny Phipps' motion on this basis as well.

**Motion # 360:  Motion for Summary Judgment of Defendant Keller Stolarczyk, PLLC**

Defendant Keller Stolarczyk, PLLC argues that it cannot be liable on plaintiffs' claims because it did not exist at the time plaintiffs allege it used the Rice MDL common benefit work in the state-court cases. Keller Stolarczyk did not come into existence until after the GMB settlement was entered into. Additionally, Keller Stolarczyk asserts that any work it might have done was directed by the Martin Phipps was not performed as part of a "joint venture" between it and Goldman Phipps. Finally, Keller Stolarczyk asserts that it did not receive any attorneys' fees from any of the litigation relating to genetically modified rice. Based on the relevant undisputed evidence, I will grant this motion.

Attorney Kim Keller formed her sole proprietorship, Keller Group, in 2002 and later changed its name to The Keller Law Firm. In January 2003, Keller formed an LLC, namely Kim Keller, LLC, and registered it in February 2003 as doing business as The Keller Group. In March 2011, Keller and her husband formed Keller Stolarczyk, PLLC – the defendant here – and began performing legal services under this form in September 2011.

The parties do not dispute that Kim Keller performed work in the state-court rice cases beginning in 2007, with such work including legal research and writing for defendant Martin Phipps and attending depositions and trials. Plaintiffs have also presented evidence showing that Keller availed herself of and used MDL common benefit work while doing this work and that Martin Phipps paid $2 million for her services.[2] There is no evidence, however, that Keller Stolarczyk performed any of this work. Although the evidence shows that Keller Stolarczyk performed some work related to the rice litigation after September of 2011, specifically, preparing appellate briefing in state-court cases and reviewing documentation to support Goldman Phipps' opposition to common benefit orders in the Rice MDL, there is no evidence that any of that work relied on the plaintiffs' common benefit work.

---

[2] As arranged between her law firms and Martin Phipps, two payments of $500,000 each were made in 2012 to Kim Keller, LLC, d/b/a Keller Group; another payment of $1 million was made in 2013 to The Keller Law Firm.

Keller Stolarczyk was listed as part of the "Phipps Team" who filed a request for attorneys' fees from the MDL Common Benefit Fund for work leading up to the GMB and MDL settlements, and Kim Keller was identified as a lawyer/partner of Keller Stolarczyk who performed some of this work. The GMB settlement was reached in July 2011. Keller Stolarczyk began performing legal services in September 2011. While this apparent misrepresentation made as an officer of the court raises a question as to the propriety of the Phipps Team's request for fees in the MDL case, it does not change the undisputed evidence before me that the Keller Stolarczyk firm did not perform any legal work in the state-court rice cases that could have used plaintiffs' common benefit work.

Nor is there evidence showing Keller Stolarczyk to be a venture partner with Martin Phipps or the Goldman Phipps firms such that Keller Stolarczyk would be jointly liable for the alleged wrongful conduct committed within the scope of the joint venture. *See Denny v. Guyton*, 40 S.W.2d 562, 571 (Mo. banc 1931); *Manley v. Horton,* 414 S.W.2d 254, 260 (Mo. 1967) (citing Restatement of Torts 2d § 491); *Firestone v. VanHolt*, 186 S.W.3d 319, 324 (Mo. Ct. App. 2005); *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978).

In sum, summary judgment must be granted to Keller Stolarczyk on plaintiffs' claim that Keller Stolarczyk, PLLC, was unjustly enriched by its access

to and use of discovery and other litigation materials generated in the MDL case in pursuit of state-court rice cases that ultimately resulted in the GMB settlement.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants Goldman Phipps PLLC, et al., to disqualify class representatives [299] is denied.

**IT IS FURTHER ORDERED** that the motions of plaintiffs for summary judgment on issue preclusion [369] and for partial summary judgment against the Phipps defendants for quantum meruit [388] are denied.

**IT IS FURTHER ORDERED** that the motions of defendants Goldman Phipps PLLC, et al., for partial summary judgment on claims relating to intervention efforts [357] and the failed MDL class certification motion [363] are granted.

**IT IS FURTHER ORDERED** that the motions of defendants Goldman Phipps PLLC, et al., for summary judgment or for partial summary judgment on plaintiffs' claims for common benefit services relating to public records and court proceedings [371]; on plaintiffs' claims for quantum meruit [374]; on plaintiffs' claims for unjust enrichment [384]; on plaintiffs' common benefit expense claims [354]; and on plaintiffs' common benefit services (damages) claims [366] are denied.

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment against the Murray defendants [379] and the Murray defendants' motions for summary judgment [390] [391] are denied.

**IT IS FURTHER ORDERED** that defendant Martin J. Phipps' individual motion for summary judgment on the issue of personal liability [287] is denied.

**IT IS FURTHER ORDERED** that the motion of plaintiffs for partial summary judgment on defendant Martin J. Phipps' twenty-second affirmative defense of personal liability [375] is granted.

**IT IS FURTHER ORDERED** that the motion of defendant Keller Stolarczyk PLLC for summary judgment [360] is granted.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2017.